Ronald Poe[1] vs. Sex Offender Registry Board.

Suffolk. January 7, 2010. - May 17, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act. Practice, Civil,* Sex offender, Assistance of counsel. *Constitutional Law,* Sex offender. *Due Process of Law,* Sex offender.

A regulation of the Sex Offender Registry Board (board), which requires the hearing examiner at a sex offender classification hearing, when provided with documentation by a licensed mental health professional who does not testify at the hearing, to exclude from evidence so much of the documentation as expresses an expert opinion as to the sex offender's risk of reoffense, is constitutionally valid on its face, where the regulation bears a rational relationship to the board's legitimate interest in the fairness of the process and the accuracy of the outcome of classification hearings [808-810]; further, the regulation as applied by a hearing examiner at a sex offender classification hearing did not violate principles of due process and equal protection, in that the regulation did not (through the board's practice at that time of not granting motions of indigent sex offenders for funds to retain experts) deny the offender, who was indigent, the opportunity to introduce in evidence the opinion of his treating psychologist that he posed only a moderate risk of reoffense, given that the treating psychologist was a fact witness as well as an expert witness whom the offender had the power to subpoena to testify [810-811].

This court concluded that sex offenders are entitled to the effective assistance of counsel at sex offender classification hearings, and that the civil formulation of the standard announced in *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), governs claims of ineffectiveness. [811-814]

A Superior Court judge properly affirmed the classification of the plaintiff as a level three sex offender by the Sex Offender Registry Board (board), where, although it was manifestly unreasonable for plaintiff's counsel to introduce in evidence documents from a treating doctor, and equally unreasonable to have provided them in discovery to the board, the plaintiff failed to demonstrate that he was prejudiced by his counsel's incompetence, given that there was no reasonable probability that the plaintiff would have been classified as anything less than a level three offender. [814-817]

Civil action commenced in the Superior Court Department on October 2, 2006.

The case was heard by *Raymond J. Brassard,* J.

---

[1] A pseudonym.

The Supreme Judicial Court granted an application for direct appellate review.

*Jonathan P. Harwell* for the plaintiff.

*Beatriz E. Van Meek,* Special Assistant Attorney General (*Jennifer K. Zalnasky,* Special Assistant Attorney General, with her) for the defendant.

*Eric Tennen,* for Committee for Public Counsel Services, amicus curiae, submitted a brief.

GANTS, J. On August 29, 2006, after an evidentiary hearing at which the petitioner (Poe) was represented by appointed counsel, a hearing examiner of the Sex Offender Registry Board (board) found that Poe posed a high risk of sexual offense recidivism and a high degree of dangerousness, and ordered that he register as a level three sex offender. Poe filed a complaint for judicial review in the Superior Court, pursuant to G. L. c. 6, § 178M, and G. L. c. 30A, § 14, and later moved for judgment on the pleadings. The judge affirmed the board's classification decision. Poe appealed, claiming (1) that he was denied due process and the equal protection of the law by the hearing officer's refusal, in accordance with 803 Code Mass. Regs. § 1.40(15) (2004), to consider his expert witness's written opinion that Poe was in "the moderate range for re-offending"; and (2) that his hearing counsel provided ineffective assistance by offering in evidence two documents that Poe contends virtually ensured his classification as a level three sex offender. We granted Poe's application for direct appellate review, and now affirm the judgment of the Superior Court.

*Background.* In August, 1990, after his second conviction of open and gross lewdness, in violation of G. L. c. 272, § 16, Poe became a "[s]ex offender," as defined in G. L. c. 6, § 178C, subject to classification by the board. On or about May 6, 2003, based on its assessment of Poe's risk of reoffense and degree of dangerousness, the board classified Poe as a level one sex offender. See G. L. c. 6, § 178L; 803 Code Mass. Regs. § 1.06 (2004). In January, 2005, after Poe was charged with enticing a child under sixteen years of age, in violation of G. L. c. 265, § 26C (*b*), the board notified him that he had been reclassified a level three sex offender. Poe challenged the classification and requested an evidentiary hearing before a hearing examiner.

After being found indigent pursuant to G. L. c. 211D, counsel was appointed to represent him at the hearing. See G. L. c. 6, § 178L (a), (c); 803 Code Mass. Regs. §§ 1.07-1.08 (2004).

1. *The board's evidence.* At the hearing conducted on July 6, 2006, the board did not call any witnesses and offered only documentary evidence, specifically a classification report dated March 3, 2005; criminal history records; police reports; court dockets; and two sexual offender treatment status reports dated April 30, 2003, and January 5, 2005, of Poe's licensed therapist, Dr. Anthony Traniello. We summarize, in chronological order, the uncontested documentary evidence offered by the board regarding Poe's sexual conduct.

In October, 1982, Poe was accused of approaching young students and making obscene remarks to them. Poe was charged with lewdness, but the case was continued without a finding before being dismissed in 1985.

On March 3, 1988, a boy who was a seventh-grade student and his friend observed Poe masturbating on the second floor of a video rental store. Poe was convicted of two counts of open and gross lewdness. He received two sixty-day suspended sentences with probation through December 11, 1989.

On August 7, 1990, a fifteen year old boy was walking home when he observed a red automobile with Poe inside. As the boy passed by the vehicle, he noticed Poe masturbating. The boy yelled at Poe, and Poe drove away. The boy reported that Poe had done this to him and his thirteen year old brother in the past. Poe was convicted of one count of open and gross lewdness and received three years' probation.

On October 25, 1990, a Brookline police officer responded to a report that several boys had been followed by Poe in his vehicle. When Poe observed one of the boys write down his registration plate number, Poe reversed direction and rapidly drove away. No charges were filed.

On February 22, 1991, the mothers of three young boys reported to the police that Poe had been following their sons for the previous two days. The responding officer approached Poe, who was in an ice cream store at the time, pretending to use the telephone. No charges were filed.

On January 15, 1993, according to Poe's criminal history rec-

ord, he was charged with one count of open and gross lewdness, but the charge was dismissed nine months later. The board did not introduce a police report or any other details related to this charge.

On September 17, 2002, a Brookline police report documented that a male student was walking home when Poe drove by him and honked his horn. The student went into his house and then reemerged and walked toward school. Poe passed him twice more, staring at him both times. The boy was afraid and nervous, and when he arrived at school, he described Poe's actions to his principal, who notified the police. In response to police questioning, Poe admitted to having honked his horn and looked at the boy. The report also stated that another police officer had noticed Poe passing by a nearby school at least three times on September 9, 2002. Poe was charged with disorderly conduct as a result of the incident involving the boy walking to school, but the charge was dismissed.

On October 16, 2004, the Brookline police department received an electronic message (e-mail) that relayed electronically-transmitted text messages, or "instant messages," during an "online conversation" or "chat," between Poe and a person posing as a fourteen year old boy, who was referred to in the police report as "T." Poe began the conversation by typing, "[H]i, i love really nice young teen boys ok with you i hope so." Poe stated that he lived in Massachusetts, and T responded that he flew into Boston when he went to visit his grandmother in New Hampshire. Poe said that he would "really love" to meet T and asked him to be his boy friend. Poe indicated his willingness to perform sexual favors on T. Poe also stated that he frequently had oral sex with two young brothers, one fifteen years of age and the other thirteen years of age, who lived near him. Near the end of the "chat," Poe admitted that he was masturbating during the instant messaging exchange.

On November 3, 2004, T again sent to police, by e-mail, part of an online instant messaging chat in which Poe asked a fifteen year old boy to "work with [him] on his ranch" taking care of horses. On November 29, 2004, Brookline police officers met with Poe, and he admitted to writing the nonsexual content of the online "chat" with T, but could not explain who typed the rest of the conversation, even though he admitted that he was

the only one with access to his online account. Poe acknowledged that he used to live near two brothers, one fifteen years of age and the other thirteen years of age, and that he would spend time with them when their mother borrowed his vehicle. He also stated that he had communicated with five or six boys in Internet "chat rooms" in the past.

As a result of this conduct, Poe pleaded guilty on October 7, 2005, to one count of enticing a child under the age of sixteen, and received a one-year suspended sentence in the house of correction with three years' probation. On the Commonwealth's recommendation, Poe was also ordered to attend sex offender counselling, provide a deoxyribonucleic acid sample, stay away from children under eighteen years of age, refrain from employment or volunteer work involving children under eighteen, and have no access to the Internet.[2]

2. *Poe's evidence.* Poe called one witness at the hearing, Michael Reed, who first met Poe in 1982, and in 1989 became his case manager at the Department of Mental Retardation (department).[3] Reed testified that intelligence testing conducted on Poe in 1982 indicated that he had an intelligence quotient of sixty-eight, which placed him in the mild retardation range. Poe "functions on . . . probably about a sixteen, seventeen year old level." Poe, who was forty-eight years of age at the time of the hearing, had lived with his elderly parents since 2001.[4] When asked if plans had been made as to where Poe would live after his parents died, Reed said that Poe's parents had discussed purchasing a condominium unit for him, but if he needed a department placement in a residential facility and was classified a level three offender, he would be placed farther away from his relatives and would be under twenty-four hour supervision. Reed testified that Poe had been employed at the same super-

---

[2]Dr. Anthony Traniello's various reports reflected that he had seen Poe weekly for individualized sex offender treatment since March 31, 2003. The enticement of a child offense occurred in 2004 while Poe was in sex offender treatment with Dr. Traniello.

[3]Effective June 30, 2009, the Department of Mental Retardation officially changed its name to the Department of Developmental Services. See G. L. c. 19B, as amended through St. 2008, c. 182, § 9, & St. 2008, c. 451, §§ 28, 187.

[4]At the time of the hearing, Poe's father was ninety-two years of age and suffered from Alzheimer's disease. His mother was eighty-seven years of age.

market for over three years, but a level three classification would probably cause Poe to lose his job and make it difficult for the department to find a work program for him that would be "secure" and not involve interaction with adolescents.

Reed testified that in the early 1990's Poe was prescribed a sex drive inhibitor, but he stopped taking it due to negative physical side effects. At the time of the hearing, Poe had an upcoming appointment with a new psychiatrist in hopes of finding a different medication. He had been seeing Dr. Traniello for sex offender treatment once per week for several years, and was preparing to begin group therapy as well. Reed testified that he envisioned Poe's treatment "continuing forever."

Reed stated that he had discussed with Poe his latest conviction of enticing a child under the age of sixteen. He said that Poe was "quite surprised" by the prosecution because he did not believe his online conduct was "that big a deal" and he "had no intentions of acting on it." In addition, Reed testified that Poe denied ever engaging in sexual contact with an adolescent male, even though he claimed to have done so during the course of the online chat.

During Poe's direct examination of Reed, Poe offered several exhibits in evidence, of which only one is relevant to this appeal: a letter from Dr. Traniello to Poe's counsel dated two days before the hearing, which expressed his opinion that Poe had made "considerable progress" and "substantially improved" and that "historical and dynamic factors combined place him in the moderate range for re-offending."

On cross-examination, the board showed Reed a letter addressed to Reed and a follow-up note, both written by a neuropsychiatrist, Dr. Chandlee Dickey, who had treated Poe. The board was evidently unaware of Dr. Dickey's letter and follow-up note until Poe's counsel provided them during discovery. Poe's counsel interjected during Reed's cross-examination that he had intended to introduce these two documents but forgot, and offered them in evidence as Poe's final exhibits. Dr. Dickey's letter, dated September 3, 1996, reported:

> "[T]he patient has exposed himself to young boys for much of his life, beginning at age 10 or 12. At 16, the patient's father knows that he exposed [himself] three or

four times. At age 20, he started running up a large credit card bill. In 1982, he exposed himself to several boys and was put on probation. In 1990, he was caught masturbating in a car while watching a young boy. In 1991, he was accused of abusing a young boy. In 1993, he exposed himself to another boy. . . . In 1994, he ran up quite a telephone bill using a 900 number gay sex line. He sent picture[s] of himself to a boy and these were used in extortion against him. Also in 1994, he was found masturbating in a window. In 1995, he invited some kids to his garage, drove with a boy, and started doing things that were clearly inappropriate."

Dr. Dickey's follow-up note, dated October 1, 1996, stated:

"I received a note from Dr. Carol Ball, who had given the patient penile plethysmography, which showed deviant arousal pattern to infant females, teenage females, prelatency, latency, and preteen and teen males. She also noted that he has frankly masturbated with teenage boys. She believed that he is at high risk for repeat behavior . . . . Dr. Ball noted that he had no remorse about his inappropriate past sexual behavior and had difficulty comprehending that such behavior could be damaging to the young boys. . . . I agree with Dr. Ball's assessment. The patient continues to deny any kind of inappropriate thoughts to me, although I have no idea whether he is being honest. I can only assume that he is continuing to have sexual fantasies."

On appeal, Poe argues that his attorney provided ineffective assistance by providing Dr. Dickey's letter and follow-up note to the board in discovery and by introducing them in evidence at the hearing.

3. *Hearing examiner's decision.* The hearing examiner's written decision summarized at length all the evidence presented at the hearing. However, while the hearing examiner acknowledged that Dr. Traniello opined that Poe had only a moderate risk to reoffend, she stated that, in accordance with the board's regulations, she did "not consider his opinion" because Dr. Traniello did not testify as a witness at the hearing.

In her summary, the hearing examiner concluded that "the

impression I have from all the evidence presented is that [Poe] presents a high risk to re-offend and poses a high degree of dangerousness and thus, a reclassification of his original classification level is warranted." She observed that, "[a]fter being convicted of and sanctioned by the courts for sexually inappropriate behavior, after repeatedly being spoken to by police for following young boys on numerous occasions, and after being in sex offender treatment with [Dr.] Traniello almost two years, [Poe] solicited a young boy over the Internet with his first sentence being how he loves really nice young teens." She also observed that the results of the penile plethysmograph conducted by Dr. Ball in 1996 "indicated that he was attracted to both male and female children, the youngest being infants." She noted that he was "capable of driving a car around the city, and maneuvering his way around the Internet chat rooms and conducting numerous communications through that media." She found these circumstances sufficient to support a level three classification, because "only Internet dissemination [of his status as a sex offender] could adequately protect young boys from a pedophile and Internet predator who solicits young boys from around the country," and because "no other sanctions or treatment have prevented this type of behavior that has continued for many years."

*Discussion. 1. The hearing examiner's refusal to consider Dr. Traniello's opinion as to the risk of sexual recidivism.* Under the board's regulations, one of the factors to be used in determining a sex offender's risk of sexual reoffense and degree of dangerousness is "whether documentation has been obtained from a licensed mental health professional that specifically indicates that a particular sex offender posed or poses a risk to reoffend."[5] 803 Code Mass. Regs. § 1.40(15) (2004). If such documentation is introduced in evidence at a classification hearing, the hearing examiner "may give the contents of this docu-

---

[5]Under G. L. c. 6, § 178K (1) (*f*), "[f]actors relevant to the risk of reoffense shall include . . . whether psychological or psychiatric profiles indicate a risk of recidivism." The board's regulations interpret this provision to permit consideration of a licensed mental health professional's opinion regarding a sex offender's risk of sexual reoffense, and permit such an opinion, if admitted in evidence, to be used in determining both the offender's risk of reoffense and the degree of dangerousness posed to the public. See 803 Code Mass. Regs. § 1.40(15) (2004).

mentation its appropriate evidentiary weight." *Id.* However, where the documentation is provided by an "[e]xpert [w]itness" who does not testify at the hearing, the hearing examiner "shall exclude from evidence so much of the documentation that expresses any opinion as to the offender's risk to reoffend."[6] *Id.*, citing 803 Code Mass. Regs. § 1.18(6) (2004). Poe argues that this regulatory restriction unconstitutionally denied him the opportunity to have the hearing examiner consider the opinion of his treating psychologist that he posed only a moderate risk of reoffense.

"A properly promulgated regulation 'has the force of law . . . and must be accorded all the deference due to a statute.' " *Massachusetts Fed'n of Teachers* v. *Board of Educ.*, 436 Mass. 763, 771 (2002), quoting *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, 723, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936 (1983). Because Poe has no fundamental right to offer in evidence an opinion that cannot be tested on cross-examination, the regulation is constitutionally valid if it bears a rational relationship to a legitimate State interest. See *Commonwealth* v. *Tate*, 424 Mass. 236, 239, cert. denied, 522 U.S. 832 (1997). We conclude that the regulation satisfies the rational basis test.

The board reasonably has determined that, while the rules of evidence do not apply to classification hearings, "[e]vidence may be admitted and given probative effect only if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." 803 Code Mass. Regs.

---

[6]An "[e]xpert [w]itness" is defined in the board's regulations as "[a] licensed mental health professional, excluding employees of the [board], whose testimony and report offering an opinion as to a sex offender's risk of reoffense and degree of dangerousness were prepared expressly for reliance by a Party at a [classification hearing]." 803 Code Mass. Regs. § 1.03 (2004). Under this definition, an opinion as to the offender's risk of reoffense that is documented by a licensed mental health professional in the course of treatment, and not expressly for use at a classification hearing, is admissible in evidence at the hearing and may be considered by the hearing examiner even if the witness does not testify. Consequently, as Poe acknowledged at the Superior Court hearing on the motion for judgment on the pleadings, the hearing examiner properly considered Dr. Ball's opinion that Poe was "at high risk to reoffend," even though she did not testify at the hearing, because Dr. Ball's opinion was not prepared expressly for use at a classification hearing. See 803 Code Mass. Regs. §§ 1.03, 1.18(5)-(6) (2004).

§ 1.19(1) (2004). It is equally reasonable for the board to determine that an opinion regarding an offender's risk of reoffense rendered by a mental health professional expressly for use at a classification hearing is not sufficiently reliable to be considered unless the expert testifies at the hearing and is subject to cross-examination. Risk of reoffense is one of the ultimate issues that the hearing examiner must decide in classifying the offender. "It goes without saying that the validity and significance of a particular expert opinion are often subject to debate." *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd.*, 452 Mass. 764, 773 (2008). Permitting consideration of such an expert opinion only where the expert testifies at the hearing serves the board's legitimate interest in the fairness of the process and the accuracy of the outcome of classification hearings.

Poe is correct that, at the time of his hearing, the board would grant an indigent sex offender's motion for funds to retain an expert only if the board also intended to rely on expert evidence prepared specifically for the classification hearing.[7] *Id.* at 770. Poe is also correct that the board rarely, if ever, relied on expert reports or testimony, and did not do so in his case, so that, in practice, he, along with other indigent sex offenders, was denied the opportunity to present the opinion of an expert witness. *Id.* Poe, however, is not correct that this meant that the consequence of applying 803 Code Mass. Regs. § 1.40(15) was to deny him, because of his indigence, the opportunity to offer in evidence Dr. Traniello's opinion that he was "in the moderate range for re-offending." Dr. Traniello, as Poe's treating psychologist, was a fact witness as well as an expert witness, and therefore Poe had the power to subpoena him to testify. See 803 Code Mass. Regs. § 1.17 (2004). There is no indication in the record that he attempted to do so. Therefore, Poe's failure to subpoena Dr. Traniello to testify at the hearing, not 803 Code Mass. Regs. § 1.40(15), deprived Poe of the opportunity to present Dr. Traniello's favorable expert opinion regarding his risk of

---

[7]We have since interpreted G. L. c. 6, § 178L (1), to authorize the board in its discretion to grant a motion for funds to retain an expert witness filed by an indigent sex offender even where the board did not intend to rely on the testimony or report of an expert witness. *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd.*, 452 Mass. 764, 765 (2008).

reoffense.[8] As a result, both his facial and as-applied challenges to the constitutionality of this regulation fail.

2. *Ineffective assistance of counsel.* We have not previously addressed whether sex offenders required to register with the board have a right to the effective assistance of counsel at classification hearings and, if so, whether the standard announced in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974) (*Saferian*), governs claims of ineffectiveness.[9] We now conclude that sex offenders are entitled to the effective assistance of counsel at classification hearings and that the civil formulation of the *Saferian* standard governs claims of ineffectiveness.

In 1999, the Legislature revised the Sex Offender and Community Notification Act to provide indigent sex offenders a statutory right to counsel in board classification hearings.[10,11]

---

[8]If Dr. Traniello had been subpoenaed as a fact witness, he would be permitted, as Poe's treating psychologist, to offer any opinion he had formed during treatment as to Poe's likelihood of sexual recidivism. See *McGarty* v. *Commonwealth*, 326 Mass. 413, 417-418 (1950) (where defendant had been examined after indictment by two psychiatrists, "there was no reason why the [defendant] could not summon the two examining psychiatrists as witnesses at the trial . . . and as it is evident that they had already formed opinions, they could have been required to give them without the payment of expert fees"). See also P.M. Lauriat, S.E. McChesney, W.H. Gordon, A.A. Rainer, Discovery § 8.14 (2008) (treating physician may be required to testify to any professional opinion he formed during treatment of patient, based on facts then known to him).

[9]In fact, we explicitly left open these questions in our denial of further appellate review in *Loe* v. *Sex Offender Registry Bd.*, 454 Mass. 1104 (2009) ("We express no opinion on whether claims of alleged 'ineffective assistance of counsel' raised in the context of proceedings to classify sex offenders, G. L. c. 6, § 178K, are to be governed by the standard articulated in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 [1974]").

[10]The amendment followed several decisions of this court holding parts of the Sex Offender and Community Notification Act unconstitutional for failing to comport with due process requirements. Taken together, these decisions required the board to provide sex offenders with individualized, evidentiary hearings before requiring registration or assigning a final classification level. See *Doe* v. *Attorney Gen.*, 430 Mass. 155, 157-158 (1999) (individualized hearing required for persons adjudicated delinquent or convicted under G. L. c. 265, § 23, before obligation to register as sex offender could be imposed); *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 98, 103-104 (1998) (classification hearing to be held before board, rather than Superior Court; board must show appropriateness of classification by preponderance of evidence and make specific findings supporting classification); *Doe* v. *Attorney Gen.*, 426 Mass. 136, 143-146 (1997) (presumptive level one sex offender entitled to evidentiary hearing before registration requirement imposed and private information disclosed).

St. 1999, c. 74, § 2. We have twice before, in other contexts, confronted the question whether a statutory grant of counsel means a right to the effective assistance of counsel. See *Commonwealth* v. *Griffin*, 404 Mass. 372, 374 (1989) (grand jury proceeding); *Care & Protection of Stephen*, 401 Mass. 144, 149 (1987) (care and protection proceeding). See also *Commonwealth* v. *Ferreira*, 67 Mass. App. Ct. 109, 115 (2006) (person facing civil commitment as sexually dangerous person has statutory and constitutional right to the effective assistance of counsel). In each instance, we have determined that the statutory right to counsel implies the statutory right to *effective* counsel. *Commonwealth* v. *Griffin*, *supra* at 374-375; *Care & Protection of Stephen*, *supra*. "The right to counsel is of little value unless there is an expectation that counsel's assistance will be effective." *Id.* We reach the same result today with respect to a sex offender's statutory right to counsel at a classification hearing.

Regardless of the context in which a claim of ineffective assistance of counsel has arisen, we have consistently applied the two-part test of *Saferian* to examine and appraise counsel's performance. See *Care & Protection of Stephen*, *supra* ("We have addressed the question of effective assistance of counsel in the context of criminal representation, and we turn to those decisions as a guide in the context of care and protection proceedings"). See also *Commonwealth* v. *Ferreira*, *supra* (using "familiar standards" of *Saferian* as "guide" to ineffectiveness claim in civil commitment proceeding). Under that test, we first consider "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer." *Saferian, supra*. If we find such poor performance by counsel, we then ask "whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Id.*

In *Care & Protection of Georgette*, 439 Mass. 28, 33 n.7 (2003), we recognized that the language "otherwise available,

---

[11]The Act requires the board to advise a sex offender twice of his right to have counsel appointed for him if he is found to be indigent: first, when the board notifies him of his recommended sex offender classification, G. L. c. 6, § 178L (1) (*a*), (*c*); and, second, when the offender requests a classification hearing, G. L. c. 6, § 178L (2).

substantial ground of defense" is "criminal law terminology that does not precisely fit" civil cases in which there is a statutory right to counsel. In civil cases, we instead "prefer to use the term 'prejudice.' " *Id.* We have defined prejudice in ineffectiveness claims as "a 'reasonable probability' that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Commonwealth* v. *Mahar*, 442 Mass. 11, 15 (2004), quoting *Strickland* v. *Washington*, 466 U.S. 668, 694 (1984). In declaring the term "prejudice" better suited to noncriminal cases, our intent is not to change materially the second prong of the *Saferian* standard. To succeed on an ineffectiveness claim in any case where a right to the effective assistance of counsel is recognized, the effect of counsel's serious incompetency must always be prejudicial. See *Commonwealth* v. *Mahar, supra*; *Commonwealth* v. *Adams*, 374 Mass. 722, 729 (1978). See also *Strickland* v. *Washington, supra* at 692 ("any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution").

With the slight and apt modification of terminology announced in *Care & Protection of Georgette, supra*, the *Saferian* test is appropriate to apply to counsel's performance at a sex offender classification hearing. At stake in a classification hearing is the sex offender's "constitutionally protected liberty and privacy interest in avoiding registration and public dissemination of registration information." *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 100 (1998). Classification and registration entail possible harm to a sex offender's earning capacity, damage to his reputation, and, "most important, . . . the statutory branding of him as a public danger." *Doe* v. *Attorney Gen.*, 426 Mass. 136, 144 (1997). In light of the serious ramifications of erroneous classification, the principle of fundamental fairness that underlies the statutory entitlement to counsel would be ill-served if sex offenders were afforded something less than what we usually refer to as the effective assistance of counsel.

Applying the civil formulation of the *Saferian* test to ineffectiveness claims brought by sex offenders also allows reliance on the rich body of case law interpreting this standard. Our

decisions holding certain acts and omissions by counsel to be either effective or ineffective will be instructive to attorneys, hearing examiners, and judges alike. In short, "the *Saferian* test brings the benefit of familiarity." *Loe* v. *Sex Offender Registry Bd.*, 73 Mass. App. Ct. 673, 686 (2009) (Sikora, J., concurring). We are not inclined to reinvent a wheel that has served us well for over thirty-five years.

We turn now to Poe's claim that his hearing counsel provided ineffective assistance in giving Dr. Dickey's letter and follow-up note to the board in discovery and subsequently introducing them in evidence at the hearing.[12] We agree that it was manifestly unreasonable for counsel to introduce these documents in evidence, and equally unreasonable to provide them in discovery to the board, where the board's regulations required such disclosure only if he intended to offer the documents in evidence. See 803 Code Mass. Regs. § 1.18(2). The letter and follow-up note each contained information that was damaging to Poe's case and that otherwise would not have been part of the record before the hearing examiner. The letter disclosed allegations of sexual offenses that were not mentioned in the evidence submitted by the board or elsewhere by Poe. It declared that Poe first began exposing himself to young boys at age ten or twelve, and exposed himself three or four times at age sixteen.[13] Most significantly, the letter included an accusation that he abused a boy, which was the only evidence that Poe had ever engaged in inappropriate touching.[14] The follow-up note stated that Poe had exhibited deviant arousal to "infant females, teenage females,

---

[12]Poe does not argue that his attorney was ineffective for failing to subpoena Dr. Traniello to testify at the hearing.

[13]"A person whose first sex offense was committed while he was under the age of 21 and subsequently committed another sex offense may be viewed as presenting a greater risk to reoffend and as posing an increased degree of dangerousness." 803 Code Mass. Regs. § 1.40(4) (2004). See G. L. c. 6, § 178K (1) (*a*) (iv) (identifying age of sex offender at time of commission of first sex offense as factor relevant to risk of reoffense). The board also believes "the length or duration of the sex offending behavior [is] important and useful information in determining dangerousness." 803 Code Mass. Regs. § 1.40(9)(c)(8) (2004). Evidence that Poe demonstrated sexually inappropriate behavior as an adolescent and continued to do so over the course of decades would support the decision to classify him as a level three offender.

[14]The board "has determined that the level of physical contact between the offender and the victim during the sex offense is another important element to

prelatency, latency, and preteen and teen males."[15] The evidence in the hearing record did not otherwise suggest that Poe was attracted to girls, and certainly not infant females.[16] The note also declared that Dr. Ball had determined that Poe "had no remorse about his inappropriate past sexual behavior and had difficulty comprehending that such behavior could be damaging to the young boys."[17] Finally, the note contained Dr. Ball's opinion, which she had expressed to Dr. Dickey, that Poe was "at high risk for repeat behavior." See note 6, *supra.*

Characterizing counsel's introduction of these documents as a "trial tactic" does not make it "immune from scrutiny." *Commonwealth* v. *Adams, supra* at 729. We do not see any information in the letter and follow-up note that reasonably could have helped Poe, but there is much that could have hurt him. We can discern no rationale for the introduction of these documents that "lawyers of ordinary training and skill" would consider "competent." *Id.* at 728, quoting *Beasley* v. *United States*, 491 F.2d 687, 696 (6th Cir. 1974). Competent counsel would have recognized that the admission of these documents would only strengthen the board's argument that Poe was highly likely to reoffend and posed a substantial danger to children.

While Poe has satisfied the first prong of *Saferian*, we conclude that he has failed to show that he was prejudiced by his attorney's incompetence, that is, that there was a reasonable probability that his classification would have been lower if he had competent counsel. Before his 2005 conviction of enticement of

---

be considered in understanding the nature of the offense and in determining a level of dangerousness." 803 Code Mass. Regs. § 1.40(9)(c)(7) (2004). Poe's counsel recognized the importance of this factor in his closing argument at the hearing, where he stated that "[n]one of the offenses charged allege him actually putting his hands on anyone, which is key here . . . ."

[15]"Latency" is defined in psychoanalysis as "the period of time from approximately age 5 years to puberty." Stedman's Medical Dictionary 1051 (28th ed. 2006).

[16]Sex offenders who target children as their victims "pose a heightened risk to public safety since children normally lack the physical and mental strength to resist an offender. In addition, children can be lured into dangerous situations more easily than most adults." 803 Code Mass. Regs. § 1.40(3) (2004).

[17]In determining the likelihood of sexual recidivism and the degree of dangerousness, the board advises consideration of "whether, or to what degree, the offender expresses remorse for his sex offenses and empathy for his victim(s)." 803 Code Mass. Regs. § 1.40(9)(c)(13).

a child, Poe had been classified by the board as a level one sex offender. At oral argument, Poe conceded that, in light of this conviction, the best his attorney could have accomplished was a level two classification.[18] The question, therefore, is whether there is a reasonable probability that the introduction in evidence of Dr. Dickey's letter and follow-up note caused him to be classified as a level three offender where he otherwise would have been a level two offender. While these documents no doubt supported a level three classification, we conclude that there was not a reasonable probability that Poe would have been classified a level two offender if these documents had not been provided in discovery and admitted in evidence.

Even without Dr. Dickey's documents, the hearing record contained evidence of Poe's many criminal charges and convictions that indicated "repetitive and compulsive behavior," G. L. c. 6, § 178K (1) (a) (ii), and "a continuing course of sexual misconduct" that demonstrated a high risk of reoffense. 803 Code Mass. Regs. § 1.40(2) (2004). For two reasons, Poe's most recent conviction of enticing a child over the Internet in October, 2004, effectively doomed him to a level three classification. First, the online "chat" revealed that Poe still wished to have sex with young teenage boys and was willing to use the Internet to entice boys to visit him for that purpose.[19] Second, he claimed to have had oral sex with two boys, ages thirteen and fifteen, who used to live near him. Consequently, the hearing officer found that Poe's conviction of enticing a child under the age of sixteen, in and of itself, demonstrates an increased risk to children and other vulnerable persons. See G. L. c. 6, § 178K (1) (b) (iii); 803 Code Mass. Regs. § 1.40(9)(c)(12) (2004). Not only did this sexual misconduct suggest that the weekly individual sex offender therapy sessions he had attended

---

[18]"Where the board determines that the risk of reoffense is moderate and the degree of dangerousness posed to the public is such that a public safety interest is served by public availability of registration information, it shall give a level 2 designation to the sex offender." G. L. c. 6, § 178K (2) (b). "Where the board determines that the risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination, it shall give a level 3 designation to the sex offender." G. L. c. 6, § 178K (2) (c).

[19]In his interview with the police on November 29, 2004, Poe admitted that he had "chatted" on the Internet with five or six boys.

since March, 2003, had failed materially to diminish his risk of sexual recidivism, but it also supported the conclusion of the hearing officer that, because Poe was capable of driving around the city and "maneuvering his way around the Internet chat rooms," only a level three classification, which provides for Internet dissemination of his identity, could adequately protect young boys from his solicitation.[20]

On this record, even without Dr. Dickey's letter and follow-up note, there was not a reasonable probability that Poe would have been classified anything less than a level three offender. We, therefore, reject Poe's ineffective assistance of counsel claim.[21]

*Conclusion.* We affirm the judgment of the Superior Court.

*So ordered.*

---

[20]Title 803 Code Mass. Regs. § 1.32(3)(b) (2004) requires the board to maintain and publish on its Web site a "Level 3 Sex Offender Internet Database." Information such as the level three sex offender's name, physical description (including a photograph, if available), home address, work address, and sexual offenses is included. See 803 Code Mass. Regs. § 1.32(3)(a) (2004). See also G. L. c. 6, § 176D (*e*).

[21]Because Poe is not entitled to relief on his ineffectiveness claim, we need not determine what remedy is appropriate where a sex offender is denied the effective assistance of counsel in his classification hearing based on his attorney's needless disclosure of damaging evidence to the board.