610           81 Mass. App. Ct. 610 (2012)

Doe, Sex Offender Registry Board No. 27914 *v.* Sex Offender Registry Board.

# JOHN DOE, SEX OFFENDER REGISTRY BOARD No. 27914 *vs.* SEX OFFENDER REGISTRY BOARD.

No. 10-P-2073.

Essex. January 9, 2012. - April 23, 2012.

Present: KATZMANN, VUONO, & MEADE, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act. Due Process of Law,* Sex offender, Competency to stand trial. *Constitutional Law,* Sex offender. *Practice, Civil,* Sex offender, Assistance of counsel. *Evidence,* Sex offender, Expert opinion. *Witness,* Expert. *Administrative Law,* Substantial evidence.

In proceedings to reclassify the plaintiff from a level two to a level three sex offender, the failure to evaluate the plaintiff's competency prior to his reclassification hearing did not violate the plaintiff's right to due process, where the plaintiff's liberty interest in not having his classification increased did not rise to the level of a fundamental right; where the robust, adversary character of the classification process minimized the risk of an erroneous classification, and the plaintiff received the opportunity to challenge the classification decision and to receive review both in the Superior Court and on appeal, with the assistance of counsel; and where the plaintiff had not proposed any additional safeguards related to his incompetency that would meaningfully protect him from an improper classification but, rather, sought foreclosure or postponement of the reclassification hearing upon a finding of incompetency. [613-616]

In proceedings before the Sex Offender Registry Board (board) to reclassify the plaintiff from a level two to a level three sex offender, the decision of a hearing examiner for the board to deny the plaintiff's motion for funds to retain an expert witness was not arbitrary or capricious, where the plaintiff failed to identify or articulate the condition or circumstance particular to him that required a particular type of expert, and where the hearing examiner properly concluded, based on the evidence and arguments, that the plaintiff had no viable claim that his mental health affected his risk of reoffense. [616-618]

Substantial evidence supported the decision of a hearing examiner of the Sex Offender Registry Board ordering that the plaintiff be reclassified from a level two to a level three sex offender, where the plaintiff's conduct and circumstances implicated numerous factors that indicated a high risk to re-offend and a high degree of dangerousness. [618-619]

At a hearing before the Sex Offender Registry Board to reclassify a sex offender from level two to level three, counsel was not ineffective for failing

to present additional evidence or a helpful definition of the sex offender's mental retardation, where the decision not to pursue or develop the matter further was not a manifestly unreasonable choice; further, there was no merit to the sex offender's other claims of ineffective assistance. [620-623]

CIVIL ACTION commenced in the Superior Court Department on February 10, 2010.

The case was heard by *Timothy Q. Feeley*, J., on a motion for judgment on the pleadings.

*Rebecca Rose* for the plaintiff.

*Paul Tuttle* for the defendant.

MEADE, J. The plaintiff, John Doe, appeals from a Superior Court judgment that affirmed a hearing examiner's decision ordering that Doe be reclassified from a level two to a level three sex offender. On appeal, Doe claims that the failure to evaluate his competency prior to his reclassification hearing violated his rights to due process; that it was an abuse of discretion to deny his request for expert funds; that the reclassification decision was not supported by substantial evidence; and that his attorney provided him with ineffective assistance. We affirm.

1. *Background.* Doe is a convicted sex offender, who was originally classified by the Sex Offender Registry Board (board) as a level two sex offender in 2003. His index offense originated with his 1989 admission to sufficient facts on three counts of indecent assault and battery on three children under the age of fourteen.[1] Two of the victims were ten year old girls, and the third was a twelve year old girl; Doe was eighteen at the time. Doe did not appeal from the level two classification.

In 2009, the board notified Doe that he had been reclassified as a level three offender, and Doe sought a de novo administrative review of that decision. The review was held before a hearing examiner, and Doe was present and represented by counsel. Relying primarily on Doe's additional sexual assaults, which occurred in New Hampshire in 2005, the hearing examiner determined that the level three reclassification was warranted. Those offenses occurred when Doe was thirty-six years old and involved the sexual assault of a fourteen year old girl, and in-

---

[1] Doe was sentenced to three concurrent two-year terms of probation.

appropriate conduct with the girl's fifteen year old friend with whom he had had a romantic relationship. These charges were dismissed after a New Hampshire judge found Doe to be incompetent to stand trial by reason of his mental retardation.[2] Even though the charges were dismissed, the hearing examiner relied on police reports, which detailed a thorough investigation involving multiple interviews, to conclude, by a preponderance of the evidence, that the assaults did occur.

In addition, the hearing examiner relied on Doe's 2007 convictions on three counts of accosting or annoying a person of the opposite sex, wherein he made sexually suggestive comments and gestures to a group of thirteen year old girls. Doe was sentenced to six months in the house of correction for these convictions. While the convictions were not of a "sex offense," the hearing examiner relied upon them as "other useful information," permitted under the regulations, because Doe made obscene gestures and yelled sexual vulgarities at the girls.

Specific to Doe's mental health, the hearing examiner determined that there was insufficient evidence for Doe's mental retardation to be considered as a risk-aggravating factor. She also concluded that his mental retardation was stable and present at the time of his various offenses and misconduct. In that light, she did not consider Doe's condition to be a mitigating factor, either. As neither Doe nor the board claimed that Doe's mental health condition was an aggravating or mitigating factor, the hearing examiner denied Doe's request for expert funds.

Based on her total findings, the hearing examiner concluded that Doe's recent misconduct demonstrated a greater risk of reoffense than that suggested at his original classification, and that he currently presents a high risk of reoffense and, given the young

---

[2]The report of the New Hampshire chief forensic examiner, who conducted Doe's competency evaluation, did not quantify the level of Doe's mental retardation. According to Doe's mother, Doe had the mental maturity of a fifteen year old boy and that his IQ was a few points higher than the cut off indicating mental retardation. Doe also claims that he was found incompetent to stand trial in connection with a 2009 charge for failing to register as a sex offender in Newburyport Division of the District Court Department. As the hearing examiner recognized, the docket sheet Doe submitted indicates that a competency examination was scheduled, but it does not reflect the outcome and Doe did not supplement the record. For purposes of our decision, we will assume that Doe was found incompetent.

ages of his victims, a high degree of dangerousness. She ordered that Doe must register as a level three sex offender. Upon Doe's appeal to the Superior Court, see G. L. c. 6, § 178M, and G. L. c. 30A, § 14, the hearing examiner's decision was affirmed.

2. *Discussion.* a. *Competency.* Prior to Doe's de novo hearing before the hearing examiner, see 803 Code Mass. Regs. § 1.10(1) (2002), Doe moved the board to continue his hearing due to his incompetency. Doe also sought an injunction in Superior Court seeking the same relief. Both were denied. Doe claims that because he had been declared incompetent to stand trial in the past, including for his most recent sex offenses in New Hampshire, the board violated his rights to due process by not continuing his reclassification hearing. As a result, Doe also claims that his "constitutional right to an attorney"[3] and his right to a fair hearing were violated. We disagree.

As the judge properly noted, the statute does not exempt incompetent persons from classification or reclassification proceedings. Doe analogizes his circumstances to criminal proceedings where due process requires a defendant to be competent to stand trial. See *Dusky* v. *United States*, 362 U.S. 402, 402 (1960); *Pate* v. *Robinson*, 383 U.S. 375, 385 (1966).[4] But the analogy is not apt. The board's proceedings are civil in nature, not criminal. That is not to say that due process protections are not available. However, those protections are different, as due process is a "flexible" concept that varies given the circumstances. *Morrissey* v. *Brewer*, 408 U.S. 471, 481 (1972). *Commonwealth* v. *Torres*, 441 Mass. 499, 502 (2004). In *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976), the United States Supreme Court identified "three distinct factors" that determine what procedures

---

[3]Doe's mischaracterization of his right to counsel as being constitutional in nature instead of statutory, see G. L. c. 6, § 178L, does not impact our decision. See *Poe* v. *Sex Offender Registry Bd.*, 456 Mass. 801, 811-812 (2010).

[4]For purposes of trial, the relevant competency inquiry is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky* v. *United States*, *supra* at 402. The "reasonable degree of rational understanding" portion of the competency test is satisfied upon a showing that the defendant possesses at least a "modicum" of rational understanding, and the test is flexible enough to accommodate a mentally ill defendant. *Commonwealth* v. *Blackstone*, 19 Mass. App. Ct. 209, 211 (1985).

are necessary in particular civil cases affecting protected "liberty" or "property" interests. These are "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

In general, "[s]ex offenders have a constitutionally protected liberty and privacy interest in avoiding registration and public dissemination of registration information" that arises from their classification. *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 100 (1998). Because Doe has already been classified as a level two offender, and he does not challenge that classification, Doe's liberty interest at stake here lies in his remaining a level two offender and not having that classification raised to level three.

In some measure, the designations impose similar burdens. "Level two and level three sex offenders must register and report annually to their local police departments, and certain sex offender registry information, including their names, photographs, home and work addresses, and the offenses for which they were convicted or adjudicated, is available on request at local police stations." *Doe, Sex Offender Registry Bd. No. 941* v. *Sex Offender Registry Bd.*, 460 Mass. 336, 337 n.1 (2011). See G. L. c. 6, §§ 178F ½, 178J, 178K(2)(*b*) & (*c*). However, for level three sex offenders, the above data is published on the Internet and is actively disseminated by local police departments by other means. G. L. c. 6, §§ 178D, 178K(2)(*c*). Thus, the increase in classification from level two to three brings with it significant additional burdens, nearly as weighty as being classified at all. Nonetheless, not being classified as a sex offender or not being classified at a higher level do not rise to the level of a fundamental right. See *Doe, Sex Offender Registry Bd. No. 1* v. *Sex Offender Registry Bd.*, 79 Mass. App. Ct. 683, 689 (2011), and cases cited. Doe does not claim that his incompetency somehow increases his liberty interest.

However, Doe does claim that his incompetency increases the

risk of an erroneous deprivation of his liberty interest. We disagree. The "robust, adversary character" of the classification process minimizes the risk of the erroneous classification. See *Commonwealth* v. *Nieves*, 446 Mass. 583, 591 (2006). Doe received a de novo hearing before an impartial hearing examiner, appointed counsel, prehearing discovery, the ability to file motions prior to the hearing, and a written final decision based on the preponderance of the evidence. *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. 768, 776 (2006). Doe was accorded the opportunity to challenge the classification decision and to receive review in the Superior Court and here on appeal. See *ibid.*

Even though Doe might be incompetent, he still had the assistance of counsel to investigate the facts underlying the board's classification and to evaluate the propriety of the board's application of any of the twenty-four factors it must consider. See *Commonwealth* v. *Torres*, 441 Mass. at 504 (attorney is almost always capable of advocating bail factors for incompetent defendant). Here, counsel did exactly that, including providing favorable testimony and letters from family and documents regarding counselling and sex offender treatment. Counsel filed and argued several prehearing motions[5] and challenged the evidence presented by the board.

In the context of civil commitment proceedings for sexually dangerous persons pursuant to G. L. c. 123A, where an individual faces the prospect of being civilly committed for the rest of his life, the Supreme Judicial Court held that it could "see no reason why the public interest in committing sexually dangerous persons to the care of the treatment center must be thwarted by the fact that one who is sexually dangerous also happens to be incompetent." *Commonwealth* v. *Nieves, supra.* Here, where the liberty interest at stake is not nearly as great as civil commitment for life, we too see no reason why the government's compelling interest in protecting the public, especially children, from recidivism by sex offenders should not be applicable to

---

[5]Doe's counsel filed several prehearing motions, including motions to continue on grounds of incompetency, for expert funds, to preclude the admission of nonconvictions and hearsay in police reports, to exclude admission of medical reports, and to preclude admission of a sex offender treatment status report.

those offenders who happen to be incompetent. See *Commonwealth* v. *Torres*, 441 Mass. at 504-507. See also *Commonwealth* v. *Burgess*, 450 Mass. 366, 372-376 (2008) (individual who has been charged with sexual offense but, due to incompetency, has not been tried and convicted of that charge may nevertheless, consistent with principles of due process, be civilly committed); *Abbott A.* v. *Commonwealth*, 458 Mass. 24, 27-33 (2010) (dangerousness hearing pursuant to G. L. c. 276, § 58A, may be conducted for juvenile who is incompetent).

Finally, Doe has not proposed any additional safeguards related to his incompetency that would meaningfully protect him from an improper classification. But he does claim that the hearing examiner should have conducted a competency hearing and, upon a finding of incompetency, the reclassification hearing would have been foreclosed or postponed. In this light, even without consideration of the fiscal and administrative burdens of this added hearing, Doe does not propose an additional safeguard, but rather an insurmountable hurdle for the board when it is presented with an incompetent sex offender. Even if the addition of a competency hearing for board proceedings "may seem to our thinking to be fairer or wiser or to give a surer promise of protection" to sex offenders, it does not mean that the procedures currently in place without it run afoul of the due process clause. See *Snyder* v. *Massachusetts*, 291 U.S. 97, 105 (1934). What remains is that incompetent sex offenders may pose a danger to the public, which must be addressed by the board, and due process does not entitle those offenders to greater protection than that afforded their competent counterparts.

b. *Expert funds.* Pursuant to G. L. c. 6, § 178L, the board has the discretion to grant funds for sex offenders to retain an expert witness even when the board does not intend to use expert evidence. *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd.*, 452 Mass. 764, 773-774 (2008). See *Doe, Sex Offender Registry Bd. No. 10216* v. *Sex Offender Registry Bd.*, 447 Mass. 779, 785 (2006). Doe claims that the hearing examiner's decision to deny him such funds was arbitrary and capricious because he needed an expert to opine on his competency and how it related to his risk of reoffending, as well as his dangerousness. We disagree.

When a sex offender seeks to obtain expert witness funds, the burden will be on him "to identify and articulate the reason or reasons, connected to a condition or circumstance special to him, that he needs to retain a particular type of expert." *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd.*, 452 Mass. at 775. "A general motion for funds to retain an expert to provide an opinion on the sex offender's risk of reoffense, without more, would appear to be insufficient." *Ibid.*

Here, Doe has failed to identify or articulate the condition or circumstance particular to him that requires a particular type of expert. Rather, he claims he needed an unspecified expert to enable the hearing examiner to have a better understanding of his deficits, and to challenge or place in a more favorable context certain police reports used at the hearing. However, by failing to specify what type of expert would assist the hearing examiner (and how) in assessing the validity of his statement to the police, Doe has not satisfied his burden. See *ibid.*

Even if Doe had met his burden, he still cannot establish that the hearing examiner's denial of his motion was arbitrary and capricious. As the judge properly noted, the hearing examiner denied the request for expert funds after concluding, based on the evidence and arguments, that Doe had no viable claim that his mental health affected his risk of reoffense. The hearing examiner found that Doe's mental health issues were stable and present at the times of his various offenses and misconduct. Perhaps even more important, the judge noted that neither Doe nor the board claimed that Doe's mental health was a risk-aggravating or mitigating factor, making expert evidence unnecessary. Also significant is that the hearing examiner did not rely on any of the three factors that focus on a sex offender's mental or physical condition, which specifically reference assessments and opinions of licensed health care professionals. See *id.* at 772 & n.15, 775; 803 Code Mass. Regs. § 1.40(1) (2004) and § 1.40(13) & (15) (2002). Finally, the hearing examiner further noted that Doe had not presented evidence "which suggest[ed] that he had been significantly involved in any treatment or program which directly addresses his limitations or conditions and which might require consideration and evaluation of the treatment effect on his risk." The decision to

deny expert funds was neither arbitrary, capricious, nor an abuse of discretion.[6]

c. *Substantial evidence.* When analyzing the validity of a board classification decision, a reviewing court must determine whether the decision is supported by substantial evidence. *Doe, Sex Offender Registry Bd. No. 10800* v. *Sex Offender Registry Bd.*, 459 Mass. 603, 632 (2011) (*Doe No. 10800*). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6), inserted by St. 1954, c. 681, § 1. The burden is on the appealing party to demonstrate the invalidity of the board's decision. *Doe No. 10800, supra.* In conducting our review of such decision, we "give due weight to the experience, technical competence, and specialized knowledge of the [board], as well as to the discretionary authority conferred upon it." *Id.* at 632-633, quoting from G. L. c. 30A, § 14(7). It is the province of the board, not this court, to weigh the credibility of the witnesses and to resolve any factual disputes. *Doe No. 10800, supra* at 633. See *Smith* v. *Sex Offender Registry Bd.*, 65 Mass. App. Ct. 803, 812-813 (2006). Here, Doe claims that the board's decision to reclassify him as a level three sex offender was not supported by substantial evidence. We disagree.

As the hearing examiner found, Doe's conduct and circumstances implicated numerous factors which indicated a high risk to reoffend and a high degree of dangerousness.[7] These include

---

[6]Doe also claims that the hearing examiner's denial of expert funds violated his right to due process "for the same reasons" that reclassifying him without regard to his competency violated that right. To the extent this constitutes an adequate appellate argument, we disagree for the reasons stated in part 2.a, *supra.* In any event, "due process protection is triggered when governmental action interferes with liberty interests." *Roe* v. *Attorney Gen.*, 434 Mass. 418, 427 (2001). Here, even though the due process clause does not itself create a liberty interest in obtaining funds for expert witnesses outside the context of prison cases, such an interest may be created by statute. See *Sandin* v. *Conner*, 515 U.S. 472, 484 (1995); *Wilkinson* v. *Austin*, 545 U.S. 209, 221 (2005). Because G. L. c. 6, § 178L, provides the board with discretion to grant expert witness funds, no such liberty interest exists to implicate the due process clause. See *Kentucky Dept. of Corrections* v. *Thompson*, 490 U.S. 454, 461-462 (1989).

[7]The factors relevant to risk of reoffense and degree of dangerousness are set forth in G. L. c. 6, § 178K(1), and 803 Code Mass. Regs. § 1.40 (2004). Doe claims that the board's application of these factors to an incompetent person was arbitrary and capricious. Because Doe did not raise this claim

two factors that the Legislature has specifically highlighted as indicative of a high risk to reoffend and a high degree of danger-ousness: factor 2 (Doe engaged in repetitive and compulsive sexual misconduct), 803 Code Mass. Regs. § 1.40(2) (2002); and factor 3 (Doe was adult offender with child victim), 803 Code Mass. Regs. § 1.40(3) (2002). Other aggravating factors the hearing examiner found applicable to Doe include factor 7 (extra-familial victims); factor 9(b) (Doe's criminal his-tory); factor 9(c)(1) (offense occurring in public); factor 9(c)(5) (violation of abuse prevention order); factor 9(c)(9) (offenses against multiple victims); factor 9(c)(12) (Doe was convicted of sex offense involving children and sexually violent offenses); and factor 20 (Doe demonstrated poor adjustment to community supervision).

The hearing examiner also considered the regulatory factors that would tend to mitigate the risk posed by Doe. She found that to his benefit, Doe enjoys the support of his family and the availability of good male role models, but noted that he spends too much time on his own with limited supervision. At bottom, considering all the evidence, the hearing examiner determined that Doe's "recent misconduct in New Hampshire and criminal activity in Massachusetts [signified an] ongoing risk of further sexual misconduct or offenses against young adolescent girls and that the risk is in fact greater than the risk suggested at the time of his original classification by his index offenses alone." Based on the preponderance of the evidence, the hearing exami-ner ordered that Doe be reclassified as a level three sex offender. According the board the substantial deference it is due, we conclude that the hearing examiner's decision is both reason-able and supported by the evidence. See *Doe No. 10800,* 459 Mass. at 632.[8]

---

before the hearing examiner, we decline to consider it on appeal. See *Boston* v. *Massachusetts Commn. Against Discrimination,* 39 Mass. App. Ct. 234, 242 (1995); *Foxboro Harness, Inc.* v. *State Racing Commn.,* 42 Mass. App. Ct. 82, 85 (1997).

[8]Doe makes other, more specific arguments about the hearing examiner's decision that are also without merit. The hearing examiner properly considered reliable hearsay evidence, and was empowered to make credibility deter-minations. See *Doe No. 10800, supra* at 632-633. We will not second guess those determinations. *Id.* at 633. See *Doe, Sex Offender Registry Bd. No. 10304* v. *Sex Offender Registry Bd.,* 70 Mass. App. Ct. 309, 312 (2007).

d. *Assistance of counsel.* When reviewing a claim of ineffective assistance of counsel at a board hearing, "we first consider 'whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer.' " *Poe* v. *Sex Offender Registry Bd.,* 456 Mass. 801, 812 (2010), quoting from *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). If we determine that counsel's representation fell within this characterization of substandard performance, we then ask whether the effect of counsel's serious incompetency was prejudicial. *Poe* v. *Sex Offender Registry Bd., supra* at 813. Prejudice in this context is understood to be a reasonable probability that the result would have been different, but for counsel's unprofessional errors. *Ibid.* See *Commonwealth* v. *Mahar,* 442 Mass. 11, 15 (2004).

Doe claims that his counsel was ineffective because he (1) failed to present additional evidence or a helpful definition of Doe's mental retardation; (2) presented the unhelpful testimony of Doe's mother and sister; (3) failed to challenge the evidence of Doe's violation of an abuse prevention order; (4) failed to timely present evidence of Doe's completion of sex offender treatment; and (5) failed to argue that Doe was not violent and that the Commonwealth did not move to civilly commit him following a finding of incompetency.

The Supreme Judicial Court has determined that adopting *Saferian* and its progeny, for the purpose of analyzing ineffective assistance claims before the board, brings with it not just a rich body of case law interpreting the standard, but also familiarity. *Poe* v. *Sex Offender Registry Bd.,* 456 Mass. at 813-814, citing *Loe* v. *Sex Offender Registry Bd.,* 73 Mass. App. Ct. 673, 686 (2009) (Sikora, J., concurring). Given that, the problem with Doe's claims is that they are being presented for the first time on appeal. As the Supreme Judicial Court has stated, "our courts strongly disfavor raising claims of ineffective assistance on direct appeal." *Commonwealth* v. *Zinser,* 446 Mass. 807, 811 (2006). "A claim of ineffective assistance of counsel should only be brought on direct appeal when the factual basis of the claim appears indisputably on the trial record — that is, where the issues do not implicate any factual questions more appro-

priately resolved by a trial judge." *Commonwealth* v. *Keon K.*, 70 Mass. App. Ct. 568, 573-574 (2007). See *Lannon* v. *Commonwealth*, 379 Mass. 786, 788 (1980). This court is not equipped to find facts in the same manner as the hearing examiner at the reclassification hearing. Nor is it appropriate for Doe to have presented this court with affidavits identifying proposed evidence, which the board notes to be absent in this appeal. The appellate resolution of an ineffective assistance claim, with a necessary factual component, would be helped by input from the administrative fact finder, i.e., the hearing examiner. Such a practice would also further the typical G. L. c. 30A review of an administrative agency's decision. See *Loe* v. *Sex Offender Registry Bd.*, *supra* at 684 n.6 (Sikora, J., concurring) (cataloging the administrative law reasons and benefits of a hearing examiner's review of an ineffective assistance claim).[9]

In *Poe*, where Poe claimed that it was ineffective assistance for counsel to have provided the board with a doctor's letter and follow-up note, the factual basis for the claim appeared on the record. *Poe* v. *Sex Offender Registry Bd.*, 456 Mass. at 814-817. Here, by contrast, Doe's first and primary argument relates to a claimed failure to provide additional evidence regarding his mental health, the factual basis for which does not undisputably appear on the record, if it appears at all. The record does reveal, in the context of Doe's request for expert funds, the hearing examiner's concern that expert testimony might have put Doe at risk of making his mental retardation an aggravating factor. Against that backdrop, counsel's decision to not further pursue or develop the matter would not have been a manifestly unreasonable choice. But even if it were not a sound tactical decision, we are left to guess at the prejudicial effect of evidence that was not submitted at the hearing and not identified on this record.

Similarly, Doe claims that counsel failed to submit documentary evidence regarding his sex offender treatment. However, counsel did submit a posthearing letter which indicated that Doe had attended all ten of his treatment classes while he was incarcerated at the Essex County house of correction. Although

---

[9]Doe does not claim, and we need not resolve, whether ineffective assistance claims should properly be resolved in the Superior Court in the first instance without findings by the hearing examiner.

the letter described the treatment program, it failed to indicate what progress Doe had made or even his level of participation, which resulted in the hearing examiner not considering it a significant mitigating factor. In this light, Doe claims that counsel failed to provide meaningful evidence that could have mitigated his risk to reoffend. However, Doe fails to identify, and the record does not reveal, what that meaningful evidence would be, which precludes any analysis of counsel's performance or prejudice resulting therefrom.

Doe's remaining claims, to the extent that they appear undisputably on the record, are without merit. The testimony by Doe's mother and sister did not trigger any aggravating factors, but instead provided a basis for the hearing examiner to conclude that Doe enjoyed the support of a stable environment, i.e., a mitigating factor. The witnesses also provided evidence regarding an improvement in Doe's judgment as well as a basis to attack the credibility of hearsay leveled against Doe.

Doe claims that counsel was ineffective for not objecting to the evidence that he violated an abuse prevention order, but Doe is unable to demonstrate how such an objection would have borne any fruit. See *Commonwealth* v. *Saferian*, 366 Mass. at 96. In fact, Doe offers no ground upon which this evidence, appearing in his board of probation report, could have been excluded. To the contrary, as the hearing examiner properly noted, pursuant to 803 Code Mass. Regs. § 1.40(9)(*c*)(5) (2002), a sex offender who violates an abuse prevention order subsequent to being convicted of a sex offense (as is the case here) demonstrates a strong drive toward sexual offending by ignoring the external controls of probation or the court. Lack of impulse control and ignoring external controls are key elements in determining the risk of recidivism and dangerousness.

Finally, Doe claims that counsel failed to argue that he was not violent and that the Commonwealth did not move to civilly commit him following a finding of his incompetency. While the strength of this argument might best be measured by the hearing examiner, given Doe's most recent high risk misconduct involving young adolescent girls in New Hampshire and in the Commonwealth, we fail to see how it would have affected the

final determination that, by a preponderance of the evidence, Doe should be classified as a level three sex offender.

*Judgment affirmed.*