================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 51
In the Matter of Edwin Lopez,
          Respondent,
        v.
Andrea Evans, &c.,
          Appellant.


          Steven C. Wu, for appellant.
          Elon Harpaz, for respondent.
          Fortune Society; Association of the Bar of the City of
New York; Mental Hygiene Legal Service, <u>amici</u> <u>curiae</u>.


PIGOTT, J.:

          We hold that when a parolee lacks mental competency to
stand trial, it is a violation of his or her due process rights
to conduct a parole revocation hearing.  In light of our concerns
about the application of the pertinent statutes to such
individuals, we urge the Legislature to address the issues raised
by the parties to this litigation.

- 1 -

                                  I.

          In 1999, petitioner Edwin Lopez, who had been convicted
of murder and was serving a sentence of 15 years to life in
prison, was released on lifetime parole supervision.  Four years
later, he was charged with misdemeanor assault.  He was found to
be unfit to stand trial under CPL 730.40 (1), which governs
proceedings related to a criminal defendant's fitness to proceed
to trial.  Lopez was committed to the custody of the Office of
Mental Health (OMH), under CPL 730.40 (2).  The assault charge
was dismissed pursuant to the same subsection, which provides
that when a defendant who has been charged with a misdemeanor is
found to be unfit to stand trial and committed to OMH's custody,
the criminal court is required to dismiss the accusatory
instrument.  Lopez was admitted to a psychiatric center and,
subsequently, OMH retained custody by a series of retention
orders and voluntary admissions under Mental Hygiene Law article
9 (Hospitalization of the mentally ill).

          On August 11, 2008, while still committed, Lopez
attacked a fellow patient, resulting in assault and harassment
charges.  Criminal Court ordered a psychiatric examination
pursuant to CPL article 730 to determine his fitness to stand
trial.  The two psychologists who examined him opined that Lopez
was not competent to stand trial.  They found that Lopez likely
suffered from dementia, which "would prevent [him] from
constructing a rational defense and collaboratively working with
his attorney."  He was "unable to talk about his case in any

intelligent fashion."  Criminal Court adopted the psychologists' findings and the charges were dismissed.  Lopez was again committed to the custody of OMH pursuant to CPL 730.40 (2).

Meanwhile, the New York State Department of Corrections and Community Supervision (DOCCS) commenced parole revocation proceedings against Lopez, based on the August 11 incident, charging him with violating a condition of his parole, 9 NYCRR 8003.2 (h) ("A releasee will not behave in such manner as to violate the provisions of any law to which he is subject which provides for penalty of imprisonment, nor will his behavior threaten the safety or well-being of himself or others").

As a result, Lopez was transferred from the custody of OMH to that of DOCCS.  At the start of the final revocation hearings, Lopez's appointed counsel requested an adjournment stating that she needed time to assess Lopez's mental condition. Counsel contended that the revocation hearing was being held in violation of her client's due process rights.  The Administrative Law Judge (ALJ) denied counsel's request.  Testimony was heard regarding the alleged assault, and the ALJ found that Lopez had violated 9 NYCRR 8003.2 (h).

During the dispositional phase of the parole revocation hearings, Lopez's counsel offered the testimony of a social worker who opined that "the best thing" for Lopez would be for

him to be restored to parole and returned to OMH's custody.[1]  The
ALJ, however, recommended parole revocation, determining that
reincarceration was appropriate, with a 24-month time assessment.
Lopez was "a violent offender," the ALJ wrote.  "He assaulted
another patient at the hospital.  Given his past criminal history
this action . . . is especially serious.  He is not currently
amenable to parole supervision.  Alternatives to incarceration
were considered but are not appropriate."

The Division of Parole adopted the ALJ's recommendation
on December 12, 2008, and Lopez was incarcerated.[2]  His
administrative appeal was denied.[3]

II.

In August 2010, while incarcerated, Lopez, represented
by counsel, commenced this CPLR article 78 proceeding, seeking to

---

[1] At the time, an OMH detainer, requiring that Lopez be
returned to OMH's custody if released from the custody of DOCCS,
was in effect.  Counsel and the social worker interpreted this to
mean that Lopez would return to OMH's custody if restored to
parole and would only remain in the custody of DOCCS if parole
were revoked.  However, a parolee remains in the custody of the
Division of Parole of DOCCS in both scenarios (see 9 NYCRR 8003.1
[a]).

[2] The OMH detainer, which provided that it "expires should
the named party become incarcerated," duly expired.

[3] In October 2012, the Parole Board granted an application
by Lopez for discretionary release.  Lopez was discharged from
prison and restored to parole supervision on January 9, 2013.  We
agree with the Appellate Division, however, that "this appeal
comes within the exception to the mootness doctrine for orders
raising novel and substantial issues that are likely to recur but
to evade appellate review" (104 AD3d 105, 108 [1st Dept 2012]).

annul the determination of the Division of Parole, vacate the
parole revocation, and obtain release from custody.  Counsel
contended that due process prohibits the Division of Parole from
proceeding with a revocation hearing against a person who has
been deemed mentally unfit to proceed to trial.  The Division of
Parole moved to deny Lopez's petition.

Supreme Court granted the motion and dismissed the
proceeding, holding that an assertion of incompetency does not
bar parole revocation proceedings.  The court cited People ex
rel. Newcomb v Metz (64 AD2d 219 [3d Dept 1978]) and Matter of
Newcomb v New York State Bd. of Parole (88 AD2d 1098 [3d Dept
1982], lv denied 57 NY2d 605 [1982], cert denied 459 US 1176
[1983]).  Those decisions held that the Parole Board must
consider a parolee's lack of mental competency as a mitigating
factor when considering alleged parole violations, but "a
determination of this question is not a condition precedent to
the parole revocation proceeding" (Metz, 64 AD2d at 223; see New
York State Bd. of Parole, 88 AD2d at 1098-1099; accord People ex
rel. Porter v Smith, 71 AD2d 1056 [4th Dept 1979]).

The Appellate Division reversed, granted Lopez's
petition, and reinstated Lopez to parole, holding that "the basic
requirements of due process applicable to a parole revocation
proceeding should now be construed to preclude going forward with
such a proceeding in the event it is determined that the parolee
is not mentally competent to participate in the hearing or to

assist his counsel in doing so" (104 AD3d 105, 108 [1st Dept 2012] [citation omitted]).  In dicta, the Appellate Division took the position, over a single-Justice concurrence, that "the statute authorizing the Parole Board to determine whether a parolee has violated parole necessarily confers upon the Board authority to determine whether the parolee possesses the mental competence required for such a determination to be rendered in accordance with due process" (104 AD3d at 110-111).

The Division of Parole appeals as of right under CPLR 5601 (b) (1).  We now affirm.

                              III.

In People ex rel. Menechino v Warden, Green Haven State Prison (27 NY2d 376 [1971]), this Court held that the demands of due process require that a parolee be represented by a lawyer and entitled to introduce testimony, in a parole revocation hearing, if he or she so chooses.  We observed that "a proceeding to revoke parole involves the right of an individual to continue at liberty or to be imprisoned.  It involves a deprivation of liberty . . . and falls within the due process provision of section 6 of article I of our State Constitution" (id. at 382 [internal quotation marks and ellipses omitted]).  We concluded that this constitutional guarantee demands representation by counsel "if the search for truth is not to be sacrificed to administrative speed and convenience" (id. at 383).

Here, once again, the constitutional question

implicates the balance between the government's interest in efficient administration of parole and the parolee's right to defend himself or herself (see id. at 382-384; see generally Mathews v Eldridge, 424 US 319, 335 [1976]).  In this calculus, truth cannot give way to efficiency.  In the present case, as in most others, it is only the parolee himself who is in a position to know the facts and assist in his or her defense.  When the parolee, by reason of mental incapacity, is unable to understand, recall, or express such vital information, it is inconsistent with due process for a parole board to proceed with a revocation hearing.

It is, of course, well established – as a matter of common law and also of due process – that "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial" (Drope v Missouri, 420 US 162, 171 [1975]). The State contends that parole revocation proceedings do not raise the same concerns because parole revocation is not part of a criminal prosecution.

It is true that parole revocation deprives an individual only of "a restricted form of liberty" and thus implicates "some form of due process [but] not the full panoply of rights due a defendant in a criminal proceeding" (People ex rel. Matthews v New York State Div. of Parole, 58 NY2d 196, 204

[1983], citing Morrissey v Brewer, 408 US 471, 480-484 [1972]).
Just as due process requires us to safeguard the liberty of
parolees, we must also recognize the state's strong interest in
effectively managing parolees without unduly burdensome
procedural restraints (see Morrissey, 408 US at 483).  However,
in balancing these competing interests, we conclude that several
of the reasons underlying the bar against prosecuting a mentally
incompetent defendant apply also to parole revocation hearings.
Clearly salient are constitutional concerns about the fundamental
fairness of a proceeding in which a defendant who is unable to
make decisions about his defense may be returned to prison.  But
foremost is the concern already mentioned, about the accuracy of
the proceedings.  An incompetent parolee is not in a position to
exercise rights, such as the right to testify and the opportunity
to confront adverse witnesses (see 9 NYCRR 8005.18 [b] [2], [4]),
that are directly related to ensuring the accuracy of fact-
finding.  It is true, as the State emphasizes, that the parolee
is guaranteed a right to representation by counsel at the
revocation hearing.  But representation is not enough.  A parolee
must be able to provide the factual underpinnings of the
presentation.

     We conclude, therefore, that holding a parole
revocation hearing after a court has deemed the parolee to be
mentally incompetent violates the due process provision in our
State Constitution.  We agree with the Appellate Division that

the Newcomb decisions, relied upon by Supreme Court, should no longer be followed.

However, the State raises certain practical objections to an affirmance, which give us pause. In particular, the State points out that the Division of Parole is not authorized to commit a mentally incompetent parolee to the custody of OMH under CPL article 730, which governs the process whereby a person who has been charged with a criminal offense and found to be incompetent to stand trial, is committed (see CPL § 730.30; see also CPL § 1.20 [16]). A parolee, by contrast, has already been convicted of a criminal offense and sentenced. Nor does the Division of Parole have its own authority to seek commitment under Mental Hygiene Law article 9. In any case, a person who is incapacitated under CPL 730.40 (1) is not necessarily mentally ill within the meaning of article 9.

The result is that, as matters stand, a parolee who has been found mentally incompetent, and therefore unfit to proceed to a parole revocation hearing under our holding today, will likely be released into the community.[4] As the State points out in its brief,

> "the Parole Board's only option would
> seemingly be to restore the mentally
> incompetent person to parole, even if in its

---

[4] It seems probable, however, that parole boards, mindful of our holding, will become reluctant to grant parole to otherwise eligible prisoners with any history of mental illness or mental disability in the first place.

> judgment the person could not successfully
> comply with his parole conditions and would
> pose a risk to public safety.  While the
> Parole Board could theoretically impose
> additional special parole conditions to
> address the parolee's mental condition, such
> conditions would serve no meaningful purpose
> if the Board would likely be unable to revoke
> parole for any subsequent violation."

In circumstances such as those presented here, the parolee falls between the cracks.  He will remain in the custody of DOCCS, and therefore will not receive mental health treatment in a psychiatric facility as he would if in the custody of OMH. And, because he is no longer incarcerated, he will obviously not receive treatment in a controlled correctional setting either. Lopez himself may be receiving outpatient mental health treatment, as a special condition of parole (see 9 NYCRR 8003.3 ["A special condition may be imposed upon a releasee either prior or subsequent to release.  The releasee shall be provided with a written copy of each special condition imposed. . ."]).  But the State is justified in pointing out the concern that other defendants who violate parole must be released, under the law, when they are deemed mentally incompetent, with no guarantee that they will receive treatment.  It is up to the Legislature to address this disparity whereby a mentally incompetent defendant who has been charged with, but not convicted of, a crime may be committed to a psychiatric facility in the custody of OMH, but a parole violator who developed mental incapacity after conviction and release may not be confined at all.

A related question is whether the Division of Parole may make determinations regarding mental competency, when it reasonably appears that the parolee may be incompetent. Federal regulations assume that a federal hearing examiner may determine whether or not a parolee is mentally incompetent (see 28 CFR 2.8 [c]; [e] [2]).[5] These rulings occur in the context of a regulatory framework in which the examiner still conducts the revocation hearing, irrespective of the mental competence determination, but "shall take into full account the parolee's mental condition in determining the facts and recommending a decision as to revocation and reparole" (28 CFR 2.8 [e] [2]). The process whereby the Division of Parole decides whether or not a parolee is mentally incompetent necessarily carries more significance when it may mean that he or she is released into the community despite a history of crime combined with mental incapacity.

The Appellate Division suggested, in dicta, that the Parole Board can assess a parolee's competency in order to determine whether it has jurisdiction to proceed with the parole revocation proceeding. Amicus Mental Hygiene Legal Service proposes that the Parole Board apply an analog to the procedures set forth under CPL article 730 for an incapacitated defendant charged with a felony to an incapacitated parolee charged with a

_____

[5] For reasons not pertinent to this case, there are still offenders on federal parole, notwithstanding the abolition of parole in the federal system.

parole violation amounting to felonious conduct, and that the Parole Board apply something similar to the procedures set forth under CPL article 730 for an incapacitated defendant charged with a misdemeanor to an incapacitated parolee charged with a parole violation equivalent to a misdemeanor.  In the present case, this issue was not directly raised because the determination that Lopez was incapacitated had already been made in the recent criminal action arising out of the same conduct.  Because the issue is not presented in this case, we express no view on the Parole Board's authority to make competency determinations in cases unlike this one where there has not been a recent judicial determination of incompetency.  We note only that it seems clear that there are statutory concerns that the Legislature should address.

Accordingly, the order of the Appellate Division should be affirmed, without costs.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, without costs.  Opinion by Judge Pigott.  Chief Judge Lippman and Judges Read, Rivera, Abdus-Salaam, Stein and Fahey concur.

Decided April 7, 2015