[60 NYS3d 169]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KARL PARRIS, Appellant.

Second Department, June 28, 2017

**APPEARANCES OF COUNSEL**

*Lynn W.L. Fahey*, New York City (*A. Alexander Donn* of counsel), for appellant.

*Richard A. Brown, District Attorney*, Kew Gardens (*John M. Castellano, Johnnette Traill, William H. Branigan* and *Anish M. Patel* of counsel), for respondent.

**OPINION OF THE COURT**

ROMAN, J.

In this proceeding pursuant to the Sex Offender Registration Act (*see* Correction Law art 6-C; hereinafter SORA), the defendant, who had a history of mental illness, was removed from the courtroom after making several outbursts during his SORA risk assessment hearing. The hearing proceeded in the defendant's absence, and the Supreme Court designated the defendant a level three (high risk) sex offender. On this appeal, we are principally called upon to consider whether the court violated the defendant's right to due process by failing to order a mental competency examination before proceeding with the SORA hearing. For the reasons that follow, we find that the court properly proceeded with the SORA hearing and designated the defendant a level three sex offender.

As set forth in the presentence report (hereinafter PSR), in December 2007, the defendant, then 17 years old, approached the complainant, who was jogging in Baisley Pond Park in Queens, and pushed her to the ground. As further stated in the PSR, the defendant pulled the complainant's pants down as she struggled, "took his penis out, rubbed it against her vagina and attempted to push his penis into her vagina." The complainant grabbed the defendant's penis, twisted it, and the defendant ran away.

On February 2, 2008, the defendant was arrested in connection with the armed robbery of an individual in Queens. Later that same day, he was arrested in connection with the instant sex offense. According to the sworn felony complaint, "the defendant admitted that he put his penis in the complainant's vagina." The PSR indicated that the defendant told the arresting officer that he "saw a pretty girl jogging in Baisley Park and wanted to have sex because he had been promised sex by two girls on 'Myspace' and they did not show up." Additionally, the defendant stated during his interview with the Probation Department that he "knew the complainant from the park" and that "the sex was mutual."

The defendant was charged with sexual abuse in the first degree. In April 2008, the defendant underwent two competency examinations pursuant to CPL 730.30 to ascertain his fitness to proceed with respect to three pending criminal cases, including the instant offense, and he was deemed not fit to proceed. An examination report dated April 14, 2008, stated that the defendant "would not be able to conduct himself in an appropri-

ate manner in any court proceedings at this time," and diagnosed him with "Psychotic Disorder, Not Otherwise Specified." A second examination report, dated April 15, 2008, prepared by a different evaluator, found that the defendant was "thought disordered and unable to discuss his charges in any reasonable fashion," or "much of anything in a meaningful way," and diagnosed him with "Psychosis, NOS."

Subsequently, the defendant was found fit to proceed, and on October 6, 2008, he pleaded guilty to sexual abuse in the first degree. A presentence mental health examination report dated October 29, 2008, which deemed the defendant fit to be sentenced, indicated that the defendant's prescribed psychiatric medication appeared to be helping with his symptoms and that he was aware of the charges against him.

The defendant was sentenced to an aggregate term of 54 months of imprisonment to be followed by five years of postrelease supervision.

In April 2012, in anticipation of the defendant's release, the Board of Examiners of Sex Offenders (hereinafter the Board) prepared a case summary and a risk assessment instrument (hereinafter RAI) to assess the defendant's risk of reoffense and the threat he posed to the safety of the public (see Correction Law § 168-l [5]). The Board assessed the defendant a total of 115 points, making him a presumptive level three (high risk) sex offender.

According to the case summary dated April 27, 2012, the defendant "currently" was in a Department of Corrections and Community Supervision (hereinafter DOCCS) "Intensive Care Program Facility in order to receive the appropriate level of Mental Health treatment that he requires." Additionally, the defendant was on the required program list for the DOCCS Sex Offender Counseling and Treatment Program following "a history of refusing sex offender treatment." The case summary also set forth the defendant's criminal history, which included convictions for criminal contempt in the second degree, robbery in the third degree, and attempted assault in the second degree. The defendant's conviction for attempted assault in the second degree stemmed from conduct which occurred during his confinement in the correctional facility. The defendant was also arrested in February 2012 for assault.

The case summary further indicated that the defendant's custodial adjustment was "considered unacceptable and include[d] serious Tier III sanctions for Lewd Conduct which

he received on September 23, 2010 [and] November 9, 2011," and that he also had "a Tier III pending for Lewd Conduct." The defendant had "also garnered an additional 10 Tier II's and 10 Tier III's." The Board concluded that a level three designation was "the most appropriate Level for this sexually violent offender [who] has serious mental health needs and cannot control himself even in a prison setting."

The defendant's SORA risk assessment hearing was held on July 16, 2012. Prior to the start of the hearing, while the defendant was being brought into the courtroom, defense counsel asked to approach the bench and a conversation was held off the record. Thereafter, the Supreme Court proceeded with the hearing.

Defense counsel challenged the assessment of 25 points against the defendant under risk factor 2 for engaging in sexual intercourse with the complainant, arguing that there was no evidence to support any allegation of actual penetration. The People responded that the statute only required penetration, however slight. After the Supreme Court remarked on the complainant's allegations, the defendant made several outbursts, including "No," "Every fucking time—," "Because you are telling me—," "Shut up man," at which point he was removed from the courtroom.

Defense counsel then stated, "Your Honor, noting that SORA is civil in nature, I gather the Court has ruled my client [has] waived his right to be present." The Supreme Court responded that it was going to proceed with the hearing, stating that the defendant's "unruly behavior [had], in effect, prevented him from being here and from participating in a manner in which he is permitted." The court denied defense counsel's application to deduct points under risk factor 2, finding that the complainant's report that the defendant rubbed his penis against her vagina and attempted to push it in was sufficient to establish penetration, however slight. The court also assessed the defendant an additional 5 points under risk factor 12 for not accepting responsibility, since he refused sex offender treatment. The court otherwise accepted the Board's point assessment, giving the defendant a total risk factor score of 120.

Defense counsel indicated that she would attempt to explain the defendant's obligations to him in writing. Counsel noted that she had attempted to speak with the defendant regarding the RAI before the calendar call, but the defendant "did not really want to discuss it." Lastly, counsel noted that she had at-

tempted to ascertain if the defendant was "being considered for review pursuant to article 10 of the Mental Health Law," and stated that, "he is, but he was unable to explain that to me."

The Supreme Court issued an order dated July 16, 2012, designating the defendant a level three sex offender.

On July 27, 2012, defense counsel and the People appeared in court, and the Supreme Court gave defense counsel the opportunity to "memorialize for the record precisely why you went ahead with the hearing even though the defendant was not actually present to participate." Defense counsel stated that at the July 16th bench conference held prior to "all proceedings on the record," she had informed the court that she had spoken with the defendant in the pens and that "his mental state at the time . . . left me concerned with his ability to comprehend the nature of the proceedings." Counsel stated that she had specifically indicated that the defendant could not comprehend the RAI, the points allocated, or the consequences of SORA. Defense counsel stated that at the bench conference, "[w]e all noted [that SORA] does not take into account the situations where the defendant by reason of mental disease . . . cannot fully comprehend the proceedings [but there is no provision] for the Court to not have conducted the hearing."

Counsel asserted that she was never able to fully explain to the defendant the consequences and nature of SORA because of his mental state. Additionally, counsel noted that the courts had found that due process rights applied in SORA proceedings, and that "[t]he record should be clear that my client's mental state prevents him from fully understanding the nature of the proceedings, also the consequences of registration but there is no provision[ ] not to have conducted these hearings."

The Supreme Court stated that "because of his mental health issues," the defendant "would not have been able to execute a knowing, intelligent, and voluntary waiver of his right to be present, so under the circumstances there was no way for the Court to have gone forward with him present and the hearing to have been held." The court also added the following:

> "there is no dispute as to those points at the time he was produced for the SORA hearing he was not acting in a rational [manner]. His counsel made the record that she could not engage him to the point where he understood the nature of the proceedings on its face and [he] appeared not fit to

participate in the SORA hearing that had been conducted."

However, the Supreme Court stated that it could not have waived the hearing. The court found that whether the defendant understood his obligations was "an entirely different issue and one that will be addressed if he ever was rearrested for failing to comply with the SORA requirement," and that it did not impact the registration requirements.

Discussion

On appeal, the defendant does not argue that the Supreme Court erred in removing him from the courtroom, or that his due process right to be present was violated by his removal from the courtroom. Instead, he contends that the court should have discontinued the SORA hearing, ordered a competency examination, and continued the hearing with the defendant present only after he was found competent to proceed. The defendant argues that while SORA does not explicitly provide for a competency examination, the court should have recognized that the defendant could not exercise his due process rights at the hearing unless he was competent, and therefore, should have employed its inherent power to order an examination.

The People respond that the defendant's argument is not properly before this Court because defense counsel never requested a competency hearing. In any event, the People contend that the defendant was not entitled to a competency examination under the Correction Law. Furthermore, the People argue that the defendant waived his right to be present at the hearing based on his disruptive conduct.

Initially, we note that a court making a risk level determination pursuant to SORA must "render an order setting forth its determinations and the findings of fact and conclusions of law on which the determinations are based" (Correction Law § 168-n [3]). Here, the Supreme Court did not adequately set forth its findings of fact and conclusions of law in its order. However, the record is sufficient for this Court to make its own findings of fact and conclusions of law, and therefore, remittal is not required (see People v Davis, 130 AD3d 598, 599 [2015]; People v Welch, 126 AD3d 773, 773 [2015]).

The record reflects that the issue of the defendant's competency was fully explored by the parties and the Supreme Court prior to the start of the SORA hearing. At the July 27, 2012, court appearance, the purpose of which was essentially to reconstruct what took place immediately prior to the hearing

on July 16, 2012, defense counsel recounted that she had informed the court at that time that the defendant, because of his mental state, could not comprehend the RAI or the consequences of SORA, and that the parties and the court had "all noted" that SORA did "not take into account the situation[ ] where the defendant by reason of mental disease . . . cannot fully comprehend the proceedings." Additionally, the court stated that "there [was] no dispute . . . at the time [the defendant] was produced for the SORA hearing he was not acting in a rational [manner]," and that defense "counsel made the record that she could not engage [the defendant] to the point where he understood the nature of the proceedings . . . and [he] appeared not fit to participate in the SORA hearing that had been conducted." The court also indicated that it "could not waive the hearing," and that whether the defendant understood his obligations under SORA was "an entirely different issue . . . that [would] be addressed if he ever was rearrested for failing to comply with the SORA requirement[s]." Under the circumstances presented, contrary to the People's contention, the issue of whether the court should have gone forward with the hearing, or sua sponte ordered a competency examination, is properly before this Court.

Furthermore, there is no merit to the People's contention that the defendant waived the right to be present at the hearing based on his disruptive behavior. "Waiver connotes the intentional relinquishment or abandonment of a known right" (*People v Armstrong*, 138 AD3d 877, 878-879 [2016]). Given the indications that the defendant was acting irrationally at the time of the hearing, and that he appeared not fit to participate in the SORA hearing, it cannot be said on this record that the defendant's conduct constituted an intentional relinquishment of the right to be present (*cf. People v Cornelius*, 107 AD2d 757 [1985]).

Turning to the merits, we begin our analysis with an overview of SORA.

"A SORA proceeding, which is civil in nature, determines the risk of reoffense by a person convicted of a qualifying sex offense" (*People v Pettigrew*, 14 NY3d 406, 408 [2010]). The legislature's stated goals in enacting SORA were "to protect the public from the danger of recidivism posed by sex offenders, to assist the criminal justice system to identify, investigate, apprehend and prosecute sex offenders, and to comply with the Federal Crime Control Act" (*People v Stevens*, 91 NY2d 270,

275 [1998] [internal quotation marks omitted]; *see* McKinney's Cons Laws of NY, Book 10B, Correction Law § 168, Historical and Statutory Notes at 15 [2014 ed]). To achieve these objectives, SORA "details a registration and notification system for individuals convicted of sex offenses based on a three-tier classification regime" (*People v Stevens*, 91 NY2d at 275; *see People v Cook*, 29 NY3d 114 [2017]) and "authorizes the dissemination of certain information about those individuals to vulnerable populations and the public" (*People v Mingo*, 12 NY3d 563, 570 [2009]). An offender "is required by law to register as a sex offender for a period that correlates with his particular risk level and designation" (*People v Diack*, 24 NY3d 674, 680 [2015]; *see* Correction Law §§ 168-f, 168-h [1]-[3]). One who, like the defendant, has been classified as a level three (high risk) sex offender must register at least once annually for life (*see* Correction Law § 168-h [2]; *People v Mingo*, 12 NY3d at 571), and the New York State Division of Criminal Justice Services maintains a subdirectory of level two and three offenders, available at all times on the Internet, which includes, among other information, the offender's name, exact address, photograph, and conviction (*see* Correction Law § 168-q [1]; *People v David W.*, 95 NY2d 130, 137 [2000]; *People v Shim*, 139 AD3d 68, 72 [2016]).

Given the registration and community notification provisions, this Court has recognized that "a SORA determination undeniably has a profound impact on a defendant's liberty interest" (*People v Brooks*, 308 AD2d 99, 105 [2003]; *see People v Shim*, 139 AD3d at 75; *People v Gutierrez-Lucero*, 103 AD3d 89, 98 [2012]). Accordingly, a sex offender facing a risk level classification under SORA has certain due process rights, including "a due process right to be present at the SORA hearing" (*People v Porter*, 37 AD3d 797, 797 [2007]; *see People v Gutierrez-Lucero*, 103 AD3d at 99; *People v Arrahman*, 83 AD3d 680, 680 [2011]). A sex offender is also entitled to

> "(1) a judicial determination of his risk level classification, (2) notice of the risk level assessment proceeding sufficiently in advance of the hearing to prepare a challenge, (3) notice of the proceeding that must include a statement of its purpose and the Board's recommended risk level classification, (4) representation by counsel, (5) prehearing discovery, (6) proof by the State of the facts supporting each risk factor by clear and convincing ev-

idence, and (7) a right to appeal" (*People v Gutierrez-Lucero*, 103 AD3d at 98; *see Doe v Pataki*, 3 F Supp 2d 456, 471-473 [SD NY 1998]).

"These due process rights have been incorporated into Correction Law § 168-n (3)" (*People v Black*, 33 AD3d 981, 981-982 [2006]; *see People v Gutierrez-Lucero*, 103 AD3d at 98).

Significantly, however, "SORA is not a penal statute and the registration requirement is not a criminal sentence. Rather than imposing punishment for a past crime, SORA is a remedial statute intended to prevent future crime" (*Matter of North v Board of Examiners of Sex Offenders of State of N.Y.*, 8 NY3d 745, 752 [2007] [citation omitted]). "Thus, 'the due process protections required for a risk level classification proceeding are not as extensive as those required in a plenary criminal or civil trial' " (*People v Wells*, 138 AD3d 947, 951 [2016], quoting *Doe v Pataki*, 3 F Supp 2d at 470; *see People v Gutierrez-Lucero*, 103 AD3d at 98). Importantly, SORA provides that upon conviction of a qualifying offense "the court shall certify that the person is a sex offender and shall include the certification in the order of commitment, if any, and judgment of conviction" (Correction Law § 168-d [1] [a]). Thus, "[t]he mandatory SORA certification is effected by operation of law upon conviction" (*People v Hernandez*, 93 NY2d 261, 268 [1999]), making it "an inescapable part of the conviction" (*id.* at 269; *see People v Gravino*, 14 NY3d 546, 556-557 [2010]).

■ Guided by these principles, we find that the Supreme Court did not violate the defendant's right to due process by failing to order a competency examination before proceeding with the SORA hearing. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands" (*Morrissey v Brewer*, 408 US 471, 481 [1972]; *see Mathews v Eldridge*, 424 US 319, 334 [1976]). The specific dictates of due process "require[ ] a weighing of three factors: the private interest affected; the risk of erroneous deprivation through the procedures used and the probable value of other procedural safeguards; and the government's interest" (*Matter of K.L.*, 1 NY3d 362, 373 [2004]; *see Mathews v Eldridge*, 424 US at 334-335; *Matter of State of New York v Ted B.*, 132 AD3d 28, 34 [2015]).

The defendant clearly has a significant interest in his SORA classification and the ability to meaningfully participate in the SORA proceeding. However, Correction Law § 168-n (3) does not provide for a competency examination prior to a SORA

hearing, nor address whether a defendant would have to be released pending a competency determination, or remain incarcerated beyond his or her release date. The defendant's argument that the Supreme Court was required to order a competency examination before proceeding with the hearing suggests that, upon a finding of incompetency, the SORA hearing and appropriate risk level designation would either be foreclosed or postponed indefinitely, which would be inconsistent with the goals of SORA and the statute's mandatory registration requirements. The State has a substantial, overriding interest in assessing the defendant's risk level "to aid law enforcement, prevent sexual victimization, and protect the public, which were the legislative purposes in enacting SORA" (*People v Wyatt*, 89 AD3d 112, 127 [2011], citing L 1995, ch 192, § 1). Furthermore, the risk of an erroneous deprivation of the defendant's interest is sufficiently mitigated by the procedures in place, which, as detailed above, include notice of the proceeding, representation by counsel, prehearing discovery, proof by the State of the facts supporting each risk factor by clear and convincing evidence, and a right to appeal (*see* Correction Law § 168-n [3]; *cf. People v David W.*, 95 NY2d at 138).

The present case is distinguishable from *Matter of Lopez v Evans* (25 NY3d 199 [2015]), upon which the defendant relies. In *Lopez*, the Court of Appeals held that it is a violation of a parolee's due process rights to conduct a parole revocation hearing when that parolee lacks the mental competency to stand trial (*see id.* at 202, 206-207). The Court found that there were "constitutional concerns about the fundamental fairness of a proceeding in which a parolee who is unable to make decisions about his defense may be returned to prison" (*id.* at 206). The Court stated that its foremost concern was "the accuracy of the proceedings," noting that "[a]n incompetent parolee is not in a position to exercise rights, such as the right to testify and the opportunity to confront adverse witnesses (*see* 9 NYCRR 8005.18 [b] [2], [4]), that are directly related to ensuring the accuracy of fact-finding" (*id.*).

There are significant distinguishing factors between a SORA proceeding and parole revocation hearings. A parolee charged with violating parole could ultimately be found not guilty of the charges, whereas a defendant convicted of a qualifying sex offense will necessarily be subject to sex offender registration as a product of the conviction. Moreover, unlike SORA proceedings, parole revocation hearings involve a proceeding in which

a defendant may be returned to prison (see id.). "SORA is regulatory . . . and is not intended to serve as a form of punishment" (People v Wells, 138 AD3d at 951).

Our consideration of the process that is due the defendant in this SORA proceeding is further instructed by the procedures utilized in civil commitment proceedings under Mental Hygiene Law article 10, also known as the Sex Offender Management and Treatment Act (hereinafter SOMTA). Despite the comparatively greater consequences to a sex offender's liberty at interest in SOMTA proceedings, the State is authorized to seek the civil commitment of a person charged with a sex offense allegedly suffering from a "mental abnormality" (Mental Hygiene Law § 10.03 [i]) even though that individual has not been tried and convicted of that offense and lacks the capacity to stand trial on that charge. Specifically, Mental Hygiene Law § 10.07 (d) provides, in relevant part, that

> "[i]n the case of a respondent committed pursuant to article seven hundred thirty of the criminal procedure law ['Mental Disease or Defect Excluding Fitness to Proceed'] for a sex offense, the attorney general shall have the burden of proving by clear and convincing evidence that the respondent did engage in the conduct constituting such offense."

While the majority of respondents in SOMTA proceedings previously have been found guilty of committing a sex offense in criminal proceedings, Mental Hygiene Law § 10.07 (d) effectively permits the State "to put incapacitated respondents on trial for sex offenses" (Matter of State of New York v Daniel OO., 88 AD3d 212, 215 [2011]). In Matter of State of New York v Daniel OO. (88 AD3d 212 [2011]), the Appellate Division, Third Department, rejected the argument that due process precluded holding a Mental Hygiene Law article 10 trial against an incapacitated respondent to establish that he had committed a sex offense (see id. at 217, 223). The Court, applying the balancing test enunciated in Mathews v Eldridge (424 US at 334-335), and noting the State's "strong interest in providing treatment to sex offenders with mental abnormalities and protecting the public from their recidivistic conduct," held that "Mental Hygiene Law § 10.07 (d) does not deprive an incompetent respondent of his or her right to due process" (88 AD3d at 223). In so holding, the Third Department noted that it joined other jurisdictions that had found similar requirements in their own civil commitment laws did not offend due

process (*see id.* at 223, citing, inter alia, *Commonwealth v Burgess*, 450 Mass 366, 372-376, 878 NE2d 921, 927-930 [2008]; *In re Detention of Greenwood*, 130 Wash App 277, 282-286, 122 P3d 747, 749-751 [2005]).

SOMTA, however, does not provide blanket protection to the community from every dangerous offender. A "sex offender requiring civil management" is defined as a "detained sex offender" suffering from a "mental abnormality," which

> "means a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [q], [i]).

Not every sex offender deemed incompetent to proceed at a SORA hearing would necessarily be a "sex offender requiring civil management" within the meaning of SOMTA (Mental Hygiene Law § 10.03 [q]). The SORA registration system protects the public from sex offenders who do not have the "mental abnormality" defined in SOMTA. Since due process does not require a competency determination in the SOMTA context, where the sex offender may be subject to the greater restriction of civil confinement, it follows that due process is not offended by the failure to hold a competency hearing in a SORA risk level hearing.

Looking to other jurisdictions for guidance, in *Doe v Sex Offender Registry Bd.* (81 Mass App Ct 610, 966 NE2d 235 [2012]), the Appeals Court of Massachusetts held that the failure to evaluate a sex offender's competency prior to his reclassification hearing did not violate his right to due process. The court found that "not being classified as a sex offender or not being classified at a higher level do not rise to the level of a fundamental right," and that "[t]he robust, adversary character of the classification process minimizes the risk of the erroneous classification" (81 Mass App Ct at 614-615, 966 NE2d at 240 [internal quotation marks omitted]). Citing its own civil commitment law, the court held that "where the liberty interest at stake is not nearly as great as civil commitment for life, we . . . see no reason why the government's compelling interest in protecting the public, especially children, from recidivism by sex offenders should not be applicable to those offenders who happen to be incompetent" (81 Mass App Ct at 615-616, 966

NE2d at 241). The court concluded that "incompetent sex offenders may pose a danger to the public, which must be addressed by the board, and due process does not entitle those offenders to greater protection than that afforded their competent counterparts" (81 Mass App Ct at 616, 966 NE2d at 241-242).

Although the Court of Appeals of Ohio has found that it violates due process to hold a classification hearing against an incapacitated offender, it has also concluded that such an offender is nevertheless subject to registration requirements. In *State v Chambers* (151 Ohio App 3d 243, 783 NE2d 965 [2002]), the Court of Appeals of Ohio held that "the trial court's decision to proceed with appellant's sexual predator hearing, after it found that appellant was incompetent, was a violation of the due process rights granted to appellant in" Ohio's sex offender registration and notification law (151 Ohio App 3d at 247, 783 NE2d at 969). The court reasoned that despite "the essentially civil nature of a sexual offender classification hearing, the Ohio legislature ha[d] specified that the offender shall have certain rights at the hearing," including the opportunity to testify, present evidence, and confront witnesses, and that these rights were "effectively rendered meaningless by the defendant's incompetency" (*id.*). Nevertheless, the court went on to hold that the trial court did not err in finding that the appellant was a sexually oriented offender (*see id.*). The court, citing to *State v Hayden* (96 Ohio St 3d 211, 215, 773 NE2d 502, 505 [2002]), explained that under the Ohio statute, "[o]nce an individual is convicted of a sexually oriented offense, he is automatically classified as a sexually oriented offender and must comply with the registration requirements" (151 Ohio App 3d at 247, 783 NE2d at 969). In *State v Hayden* (96 Ohio St 3d at 214-215, 773 NE2d at 505-506), the Supreme Court of Ohio held that the defendant therein was not statutorily entitled to a classification hearing, and that the Due Process Clauses of the United States Constitution and Ohio Constitution did not require a trial court to conduct a hearing to determine whether a defendant was a sexually oriented offender (96 Ohio St 3d at 214-215, 773 NE2d at 505-506).

Taking all these considerations into account, and mindful of SORA's core purpose of protecting the public, we conclude that the Supreme Court did not violate the defendant's right to due process by conducting the SORA hearing in his absence, without conducting a competency hearing. We reject the defendant's proposed remedy, offered at oral argument, that the

court should impose a level one designation until the defendant is competent to proceed with the hearing (*cf. Doe v Pataki*, 3 F Supp 2d at 479). If a defendant is never deemed competent to proceed, the risk level classification hearing may never be held. This may result in a risk level designation that does not properly reflect that individual's risk to the community. In fact, the defendant's alternative contention on appeal that he should only have been assessed 10 points, rather than 25 points, under risk factor 2, would result in a level two designation, not a level one.

▪ While the absence of a provision in SORA for a proceeding involving a defendant who is incapacitated is an issue which the legislature may wish to address, we hold that if, and when, the defendant is mentally competent to understand the nature of the SORA proceeding, a de novo SORA risk assessment hearing may be held. Correction Law § 168-o (2) permits a sex offender required to register pursuant to SORA to petition the court annually for modification of his or her risk level classification (*see People v Hayden*, 144 AD3d 1010 [2016]; *People v Palladino*, 137 AD3d 1098, 1099 [2016]). Although the statute places the burden on a defendant seeking modification to prove the facts supporting the requested modification by clear and convincing evidence (*see* Correction Law § 168-o [2]), in light of the fact that an incompetent defendant is not "present" at the original hearing, the burden should remain with the People at the subsequent hearing at which the defendant is, for the first time, present. This approach fulfills the court's mandatory obligations under SORA and ensures the statute's goal of protecting the public, while, at the same time, affording the defendant the opportunity to be present and heard on the issue of his risk level designation when he is competent to do so.

We now turn to the defendant's contention that the Supreme Court erred in assessing 25 points under risk factor 2 for engaging in sexual intercourse with the complainant.

▪ In establishing a defendant's risk level pursuant to SORA, the People bear the burden of establishing, by clear and convincing evidence, the facts supporting the determinations sought (*see* Correction Law § 168-n [3]; *People v Mingo*, 12 NY3d at 571; *People v Sanchez*, 136 AD3d 1007 [2016]). Here, contrary to the defendant's contention, the People established, by clear and convincing evidence, that he engaged in sexual intercourse with the complainant, which "occurs upon any

penetration, however slight" (Penal Law § 130.00 [1]; *see People v Williams*, 259 AD2d 509 [1999]). The felony complaint indicated that the complainant stated that the defendant rubbed his penis against her vagina and attempted to push his penis into her vagina, and that the defendant admitted putting his penis in the complainant's vagina. Additionally, according to the PSR, the defendant stated during his interview with the Probation Department that "the sex was mutual." Although the defendant was charged with sexual abuse, and not rape, the Supreme Court "was not limited to considering only the crime[ ] of which the defendant was convicted in making its determination" (*People v Strzelecki*, 125 AD3d 737, 737 [2015]), and it properly relied upon the defendant's admissions and the complainant's statement (*see People v Fowara*, 128 AD3d 932, 933 [2015]). Therefore, the Supreme Court properly assessed the defendant 25 points under risk factor 2.

The defendant's remaining contention is without merit.

Accordingly, the Supreme Court properly designated the defendant a level three sex offender, and the order is affirmed.

LEVENTHAL, J.P., HINDS-RADIX and BRATHWAITE NELSON, JJ., concur.

Ordered that the order is affirmed, without costs or disbursements.