OPINION OF THE COURT
Mario F. Mattei, J.
Facts*
On February 28, 2011, the victim exited a bus and was walking towards her home when she was accosted by the defendant. He hit her on her arm several times. He exposed his erect penis to her and rubbed it against her buttocks over her pants. He groped her breasts. When the victim refused to take the defendant home, he grabbed her face hard. The victim was able to call her aunt under the ruse of bringing the defendant home with her. After the call however, the defendant continued to try to drag the victim to a deserted park. The victim’s aunt arrived and was able to rescue the victim and cause the defendant to remain until the police arrived.
*563 On November 15, 2013, the defendant pleaded guilty to sexual abuse in the first degree (Penal Law § 130.65). He was sentenced to a determinate term of five years of incarceration, to be followed by a period of five years of postrelease supervision.
On March 24, 2017, after being informed of his rights and the consequences of not appearing by both the court and his attorney, the defendant voluntarily and knowingly waived his right to be present. The defendant and his attorney consented to the court entering a provisional order determining that the defendant was a sexually violent offender and a risk level two offender. The defendant was subsequently released from prison, and on May 5, 2017, appeared at the risk level assessment hearing.
Special Designation
The People and the Board of Examiners of Sex Offenders contend that the defendant is a sexually violent offender due to his conviction for sexual abuse in the first degree. The defendant does not contest this designation.
Risk Level Assessments
Both the Board and the People recommend that the defendant be found a level two sex offender.
The Board and the People assess the defendant with 85 points as follows:
10 points for risk factor 1 (use of violence);
five points for risk factor 2 (sexual contact with victim);
20 points for risk factor 7 (relationship with the victim);
30 points for risk factor 9 (prior crimes);
10 points for risk factor 10 (recency of prior crime);
10 points for risk factor 13 (conduct while confined).
The defendant contests the points assessed under risk factors 10 and 13, concluding that the defendant is properly designated a risk level one.
Findings
1. The People have proved by clear and convincing evidence that the defendant used forcible compulsion during the incident and therefore will be assessed with 10 points under risk factor 1.
The grand jury minutes indicate that the defendant physically grabbed the victim, hit the victim several times when she *564 refused to comply with his demands, and physically tried to drag her to an isolated park.
2. The People have proved by clear and convincing evidence that the defendant had sexual contact with the victim over her clothing and therefore will be assessed with five points for risk factor 2.
The grand jury minutes indicate that the defendant grabbed the victim, pulled his pants down and rubbed his erect penis on her buttocks, and fondled her breasts over her clothing. He then grabbed the victim by the face and tried to lead her to a dark vacant park.
3. The People have proved by clear and convincing evidence that the defendant and the victim were strangers, therefore the defendant will be assessed 20 points under risk factor 7.
The grand jury minutes indicate that the victim had never seen the defendant before he sexually assaulted her.
4. The People have proved by clear and convincing evidence that the defendant had been convicted of a prior violent felony and therefore the defendant will be assessed 30 points under risk factor 9.
On July 2, 2008, the defendant pleaded guilty to assault in the second degree (Penal Law § 120.05 [6]), a class D violent felony.
5. The People have proved that the defendant was convicted of a felony within three years of the instant offense, and therefore the defendant will be assessed 10 points under risk factor 10.
The defendant pleaded guilty and was sentenced on July 2, 2008 to the felony of assault in the second degree. He committed the instant offense on February 28, 2011, less than three years after his first felony conviction.
The defendant’s positions that the three year period should start when the defendant was released on bail or his own recognizance on his prior felony conviction, and not on the date of the conviction, or that once a conviction is obtained the time goes back retroactively to the date of the crime, are unpersuasive.
The Guidelines under “Risk Factor 10: Recency of Prior Felony or Sex Crime” state that “[t]he offender has a previous conviction or adjudication for a felony or a sex crime that occurred less than three years before the instant offense” (Sex Offender Registration Act: Risk Assessment Guidelines and *565 Commentary). The time is triggered by a “conviction.” Defendant’s position would mean that an offender who is arrested and then released at his arraignment would receive “credit,” for Sex Offender Registration Act (SORA) purposes, for the time his case is pending in court, while the defendant who is unable to post bail would not. Not only is this an undesired result, it is contrary to the statute because “conviction” is a defined term. Under CPL 1.20 (13), “conviction” means “the entry of a guilty plea to . . .an accusatory instrument.”
There is a second ground for not crediting the defendant with this time. After he was arrested on the first case, and held in jail on bail, the parties consented, and the court agreed, to allow the defendant to be released, but only on the condition that he enter a specific secure psychiatric institution. The defendant was not actually released into the community, but rather into a secure facility where he could not be in the community. As the Commentary states, “this category measures the time from when the offender is released into the community until the date he commits the instant offense” (Specific Guidelines at 14).
6. The People have not proved that the defendant’s conduct while incarcerated was unsatisfactory, therefore the defendant will not be assessed 10 points under risk factor 13.
The defendant was found guilty of a tier III infraction for violent conduct and fighting, and another tier III infraction for alcohol intoxication. He was also found guilty of two tier II violations.
Defendant’s contention that his last tier III infraction is mitigated because the defendant was being verbally harassed by another inmate before he was involved in the fight is compelling. The defendant engaged in the fight after he was verbally antagonized by being called a “retard” and being told by the other inmate that he could not stand in the food line. The records indicate that once the fight began, officers responded and noted that the defendant stopped fighting the minute he was ordered to stop. Based upon the provocation, and that this was the defendant’s only violation in the last two years of his incarceration, the defendant will be scored conservatively in this area and the points will not be assessed despite the other violations on his prison record.
Presumptive Risk Level
The defendant is properly assessed with 75 points and is therefore a presumptive risk level two.
*566 Downward Departure Request
A defendant seeking a downward departure from the presumptive risk level under the SORA Guidelines has the initial burden of (1) identifying, as a matter of law, an appropriate mitigating factor, namely, a factor which tends to establish a lower likelihood of reoffense or danger to the community and is of a kind, or to a degree, that is otherwise not adequately taken into account by the Guidelines, and (2) establishing the facts in support of its existence by a preponderance of the evidence (Correction Law § 168 et seq.) see People v Gillotti, 23 NY3d 841 [2014]; People v Torres, 124 AD3d 744 [2d Dept 2015]).
“Under the Sex Offender Registration Act (hereinafter SORA), a court must follow three analytical steps to determine whether to downwardly depart from the presumptive risk level. First, the court must decide whether the mitigating circumstances alleged by the defendant are, as a matter of law, of a kind or to a degree not adequately taken into account by the SORA guidelines . . . Second, the court must decide whether the defendant has adduced sufficient evidence to meet his or her burden of proof in establishing that the alleged mitigating circumstances actually exist . . . The defendant must prove the facts supporting a downward departure by a preponderance of the evidence . . . And third, if the defendant ‘surmounts the first two steps, the law permits a departure, but the court still has discretion to refuse to depart or to grant a departure’ ” (People v Houston, 122 AD3d 915, 915 [2d Dept 2014], lv denied 24 NY3d 917 [2015]).
The defendant had not met his burden of showing that the mitigating circumstances are not adequately taken into account by the risk assessment instrument.
The defendant’s contention is that a downward departure is appropriate because 40 of the points the defendant is assessed with are due to his prior felony conviction. Clearly, the assessment of points on the risk assessment instrument is something taken into account by the risk assessment instrument, and is therefore not a proper basis for a downward departure. Allowing the defendant to pick and choose and protest the assessment of points for risk factors not directly related to his sex offense is contrary to the purposes of SORA, as all the risk factors, not just those associated with the underly *567 ing offense, are formulated to “develop guidelines and procedures to assess the risk of a repeat offense by [a] sex offender and the threat posed to public safety” (Correction Law § 168-1 [5]). “The Criminal History section of the instrument asks for information about the offender’s prior crimes . . . The Board concluded that these determinations are reliable indicators of wrongdoing and, therefore, should be considered in assessing an offender’s likelihood of reoffense and danger to public safety” (Commentary, General Principles at 6, para 10).
Conclusion
The assessment of 75 points on the risk assessment instrument does not over assess the defendant’s likelihood to reoff-end. “[T]he threat posed by a sex offender depends upon two factors: (i) the offender’s likelihood of reoffense and (ii) the harm that would be inflicted if he did reoffend” (Commentary, General Principles at 2, para 1). The request for a downward departure does not adequately take into consideration the harm the defendant would cause should he reoffend. The defendant forcibly grabbed a stranger and attempted to bring her to an isolated park at 6:30 on a February evening. Presumably it was dark at the time. He had followed her for a short distance after she got off a bus. He was aroused, with his penis out of his pants, while accosting the woman on a public street. She was a stranger, so it is clear that the defendant’s compulsion to sexually abuse this woman was entirely of his own thoughts and actions. Although not fully documented, the defendant has some type of psychiatric issue, perhaps leading to his compulsion to commit the attack in the manner that he did. One of the purposes of SORA is to provide notice and protection to the community (People v Parris, 153 AD3d 68 [2d Dept 2017]).
“SORA is not a penal statute and the registration requirement is not a criminal sentence. Rather than imposing punishment for a past crime, SORA is a remedial statute intended to prevent future crime; its aim is to ‘protect! ] communities by notifying them of the presence of individuals who may present a danger and enhancing law enforcement authorities’ ability to fight sex crimes’ ” (Matter of North v Board of Examiners of Sex Offenders of State of N.Y., 8 NY3d 745, 752 [2007] [citation omitted]; People v Parilla, 109 AD3d 20 [1st Dept 2013], lv denied 21 NY3d 865 [2013]).
*568 A risk level one designation would not be in accord with these purposes of the SORA laws and would underassess the likelihood and danger of the defendant’s reoffense.
Therefore, the defendant is designated a risk level two, sexually violent offender.

 Based upon the reliable evidence (People v Mingo, 12 NY3d 563 [2009]).