NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-368

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 22460

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment affirming his reclassification by the Sex Offender Registry Board (SORB or board) as a level two sex offender.  On appeal, Doe raises two overarching issues.  First, he argues that the board's decision was arbitrary and capricious and not supported by substantial evidence because the hearing examiner failed to make detailed findings of Doe's risk of reoffense and degree of dangerousness.  Second, Doe argues that his Superior Court counsel was ineffective for failing to challenge the

hearing examiner's application of factors 10, 24, 33, and 38.[1]
We affirm.

Discussion.  1.  Standard of review.  "We review a judge's
consideration of an agency decision de novo."  Doe, Sex Offender
Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass.
App. Ct. 85, 89 (2019).  "To determine the validity of an
agency's decision, the reviewing court must determine whether
the decision is supported by substantial evidence."  Doe, Sex
Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd.,
447 Mass. 779, 787 (2006).  Substantial evidence is "such
evidence as a reasonable mind might accept as adequate to
support a conclusion."  G. L. c. 30A, § 1 (6).  "[W]e give due
weight to the experience, technical competence, and specialized
knowledge of the agency" (citation omitted).  Doe, Sex Offender
Registry Bd. No. 528042 v. Sex Offender Registry Bd., 496 Mass.
437, 441 (2025) (Doe No. 528042).  A hearing examiner also has
discretion to consider which regulatory factors are applicable
in each case and how much weight to give to each factor.  Id.
See Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender

---

[1] We refer to SORB's classification factors by number, or
name and number, it being understood that each of them appears
in the corresponding subpart of 803 Code Mass. Regs. § 1.33
(2016).  SORB's regulations were updated in 2025, but the 2016
version of the regulations were in effect at the time of the
hearing examiner's decision in this case and therefore govern
our analysis.

2

Registry Bd., 81 Mass. App. Ct. 639, 651 (2012). "Accordingly, our review does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion as an agency or local board, but only whether a contrary conclusion is not merely a possible but a necessary inference" (quotation, citation, alteration omitted). Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 110 (2014).

2. Doe's level two classification. Doe argues his level two classification was arbitrary and capricious, with the main thrust of the argument being that the hearing examiner used a "checklist approach." Perfunctory, checklist risk-classification decisions are, of course, incompatible with the reasoned analysis required of a SORB classification. See Doe, Sex Offender Registry Bd. No. 11204 v. Sex Offender Registry Bd., 97 Mass. App. Ct. 564, 575-576 (2020) (Doe No. 11204). Furthermore, hearing examiners are required "to make explicit [their] findings regarding each of . . . three elements, [risk of reoffense, degree of dangerousness, and Internet publication,] and to make clear that each determination is supported by clear and convincing evidence." Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 657 (2019) (Doe No. 496501). Here, the hearing examiner's

3

analysis was detailed and specific to Doe's personal circumstances and far from a "tally sheet of aggravating and mitigating factors." Doe No. 11204, supra. Rather than a simple determination that "the former outweighed the latter," id. at 576, the hearing examiner noted which factors contributed to his analysis for each element and considered the relevant research.

Doe also argues that the hearing examiner improperly considered factors 10, 11, 12, and 15 as part of his assessment of Doe's degree of dangerousness. Factor 10 relates to contact with the criminal justice system; factor 11 to violence unrelated to sex assaults; factor 12 to behavior while incarcerated or civilly committed; and factor 15 to hostility toward women. In evaluating an offender's degree of dangerousness, "a hearing examiner must consider 'the severity and extent of the harm the offender would present to the public in the event of reoffense.'" Doe No. 496501, 482 Mass. at 659, quoting 803 Code Mass. Regs. § 1.20(2)(b) (2016). This consideration must include "the nature and type of offense the offender would be likely to commit if he or she reoffended." Doe No. 496501, supra. Doe argues that, because the above factors do not bear directly on the "nature and type" of

4

potential reoffense, the hearing examiner's consideration of these factors was erroneous.  We disagree.

First, we note that the regulation specifies that the presence of each of the above factors correlates to an increased degree of dangerousness.  See 803 Code Mass. Regs. § 1.33(10)-(12), (15).  Second, contrary to Doe's position, the holding in Doe No. 496501 does not require that every factor relate to the nature and type of a potential reoffense in determining the degree of dangerousness.  Rather, the holding provides that the level of dangerousness a hearing examiner finds in each case should logically relate to the level of harm an offender is capable of causing.  See Doe No. 496501, 482 Mass. at 659-660 (risk of reoffense relating only to noncontact offenses, where victim not put in fear of bodily harm, unlikely to pose moderate degree of dangerousness).  Here, Doe was convicted of two counts of aggravated rape, in violation of G. L. c. 265, § 22 (a), stemming from an incident in which he orally and vaginally raped the victim and threatened to kill her with a gun.  Given Doe's history of sexual violence, the hearing examiner's decision was neither arbitrary and capricious nor unsupported by substantial evidence.

The remainder of Doe's appellate argument amounts to a challenge to the regulatory scheme itself, rather than any

5

particular failing of the hearing examiner.  For example, Doe takes issue with the fact that the various risk levels are not defined in the relevant statutory and regulatory scheme.  He did not bring those challenges in a declaratory judgment action, and thus we "are without jurisdiction to decide the constitutionality of the classification scheme."  Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 631 (2011) (Doe No. 10800).

3.  Ineffective assistance of counsel.  Doe argues that his counsel was ineffective in the Superior Court proceeding for failing to challenge the hearing examiner's application of factors 10, 24, 33, and 38.[2]  To support an ineffective assistance of counsel claim in the sex offender registry context, the offender must show that "there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer."  Poe v. Sex Offender Registry Bd., 456 Mass. 801, 812 (2010), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  In cases where counsel's performance falls measurably below the standard of an ordinary, fallible lawyer, we then consider whether counsel's performance

_____

[2] We note that Doe clarified at oral argument that he raises his ineffective assistance argument solely for the purpose of challenging the application of the factors.

6

prejudiced Doe. Poe, supra at 813. Furthermore, the burden is on Doe to prove ineffective assistance of counsel. See Commonwealth v. Hudson, 446 Mass. 709, 715 (2006). Importantly, "[j]udicial scrutiny of counsel's performance [is] highly deferential, indulging in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" (quotation, citation, alteration omitted). Commonwealth v. Florentino, 396 Mass. 689, 690 (1986). Doe argues that the application of each of the above factors was plainly erroneous such that any competent attorney would have challenged them on appeal. Accordingly, we review the hearing examiner's application of each factor looking not merely for error, but rather for an error so grievous that counsel's failure to challenge it on appeal fell measurably below that which might be expected from an ordinary fallible lawyer. See Poe, supra at 812.

a. Factor 10: Contact with the criminal justice system. The hearing examiner applied factor 10 to Doe with moderate weight due to Doe's lengthy criminal record in addition to the governing sex offenses. He noted that Doe's contacts with the criminal justice system all occurred prior to 1993, when Doe was sentenced for the governing sex offenses. He further noted that Doe was released from custody in July 2012 and was on probation

7

until 2016.  Doe argues that this application was arbitrary and capricious because his contacts with the criminal justice system were remote in time, the hearing examiner's consideration of the factor was inadequate, and because the application of factor 10 was incompatible with the hearing examiner's application of factor 12, "behavior while incarcerated."

To the contrary, it is clear from the hearing examiner's application of factor 10 that he considered "the number and type of criminal charges, dispositions on the charges, [and] dates of the criminal conduct."  803 Code Mass. Regs. § 1.33(10)(a).  Doe had numerous contacts with the criminal justice system over the course of two decades, based on which the hearing examiner found that Doe "engaged in an ongoing pattern of physically abusive behavior towards women," in addition to his 1993 convictions of aggravated rape.  In this light, a "reflexive application" of the factor would land on full weight, and the hearing examiner's downward departure from full weight to moderate weight reflected the hearing examiner's consideration of the change in Doe's circumstances over time.  And as for Doe's claim that the discrepancy between the hearing examiner's applications of factors 10 and 12 shows the decision was arbitrary, we note that what weight to assign a given factor lies within the sound discretion of the hearing examiner.  Doe No. 528042, 496 Mass.

at 441.  There are any number of legitimate reasons why a hearing examiner might give moderate weight to an offender's contacts with the criminal justice system while giving minimal weight to the offender's disciplinary record while incarcerated.  After careful review, we conclude that challenging the hearing examiner's application of factor 10 likely would have been futile, and accordingly Doe's counsel's failure to challenge it did not fall below the standard of an ordinary fallible lawyer.  See Commonwealth v. Collins, 470 Mass. 255, 261 (2014) ("defense counsel was not ineffective for failing to make an objection that would have been futile under the prevailing case law").

b.  Factor 24:  Less than satisfactory participation in sex offender treatment.  Doe refused to participate in sex offender treatment altogether, and the hearing examiner applied with full weight factor 24, which states that "[o]ffenders who refuse to participate in . . . sex offender treatment present an increased risk of re-offense."  803 Code Mass. Regs. § 1.33(24)(a).  Doe claims this was erroneous because the hearing examiner ignored expert testimony from Doe's 2012 classification hearing, opining that there is no link between an offender's refusing treatment and risk of reoffense.  Doe also claims that a research article, submitted for the first time on appeal, so refutes the research underlying factor 24 that Doe's prior counsel was ineffective

for not offering it in evidence at the reclassification hearing. We disagree. The hearing examiner dealt squarely with the expert testimony, giving it little weight due in part to the expert's disregard of collateral reports the hearing examiner found credible. The hearing examiner was not required to accept the expert's testimony and gave a reasoned analysis for why he discounted it. See Doe No. 10800, 459 Mass. at 638-639. Furthermore, the research offered by Doe on appeal is not dispositive, as it discusses only the recidivism effect of sex offender treatment on participants who began but did not complete treatment, and did not measure recidivism on those, such as Doe, who refused treatment altogether. Doe's counsel's failure to challenge the application of factor 24 or introduce evidence at the hearing did not fall below the standard of an ordinary fallible lawyer.

c. Factor 33: Home situation and support systems. Factor 33 provides that an adult offender presents a reduced risk of reoffense when supported by "family, friends, and acquaintances." 803 Code Mass. Regs. § 1.33(33)(a). The hearing examiner must give greater weight to evidence of a "support network that is aware of the offender's sex offense history and provides guidance, supervision, and support of rehabilitation." Id. The hearing examiner applied factor 33

10

with minimal weight, which Doe argues was erroneous because the record showed Doe's supporters were aware of his sex offenses. We are unpersuaded. As evidence of his community support, Doe offered his own affidavit, an affidavit from his neighbor, and four letters of support. The hearing examiner discounted much of this evidence because it failed to show Doe's supporters were aware of his sex offenses and did not describe what support they gave Doe to assist him in remaining offense-free. While Doe's neighbor was aware of his convictions for sex offenses, she made clear that she believed he was innocent of them. The hearing examiner was accordingly not required to apply factor 33 with increased mitigating weight and was within his discretion to afford minimal weight to this factor. See Doe No. 10800, 459 Mass. at 638-639. Any failure by Doe's counsel to challenge the application of factor 33 did not fall below the standard of an ordinary fallible lawyer.

d. Factor 38: Victim impact statements. Finally, Doe argues the hearing examiner committed error in considering the victim impact statements. He argues the hearing examiner did not explain how the effect of the rapes on Doe's victim relate to Doe's degree of dangerousness, and that such an application is contrary to SORB's regulations. We disagree.

11

Pursuant to G. L. c. 6, § 178K (1) (k), hearing examiners are mandated to "review any victim impact statement."  Also, factor 38 "recognizes the substantial impact sex offenses have on victims."  803 Code Mass. Regs. § 1.33(38)(a).  Nothing in the statutory or regulatory language precludes a hearing examiner from considering how an offender's past conduct effected the victim, and how that might bear on the likely consequences for potential future victims.  Furthermore, it was appropriate for the hearing examiner to "recognize[] the substantial impact the sex offenses have had on the [v]ictim," and the hearing examiner did not assign the victim impact statements any weight or categorize them as a risk-elevating factor.  Acknowledging the victim's physical and psychological injuries is important to the consideration of the harm Doe is capable of causing should he reoffend.  We discern nothing in the hearing examiner's application of factor 38 to support the claim that failure to challenge it fell below the standard of an ordinary fallible lawyer.

In conclusion, the record does not support Doe's claim of

12

ineffective assistance of counsel because there was no error in the hearing examiner's application of the above factors.  See Poe, 456 Mass. at 813.

Judgment affirmed.

By the Court (Grant, Walsh & Brennan, JJ.[3]),

*Paul Little*

Clerk

Entered:  June 5, 2026.

---

[3] The panelists are listed in order of seniority.